The STATE of Ohio, Appellee,

v.

EMERICK, Appellant.

[Cite as *State v. Emerick,* 170 Ohio App.3d 647, 2007-Ohio-1334.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21505.

Decided March 23, 2007.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Jill R. Sink, Assistant Prosecuting Attorney, for appellee.

Mark Godsey, for appellant.

---

Donovan, Judge.

{¶ 1} Defendant-appellant, Edmund E. Emerick III, appeals a decision of the Montgomery County Court of Common Pleas that overruled his application for postconviction deoxyribonucleic acid ("DNA") testing. Emerick filed his memorandum in support of his application for postconviction DNA testing on October 28, 2005. On November 30, 2005, the state filed its responsive brief. Emerick filed a reply to the state's memorandum on January 11, 2006. The trial court filed its decision and entry overruling Emerick's application on February 9, 2006. Emerick filed a notice of appeal with this court on March 7, 2006.

I

{¶ 2} We set forth the history of the case in *State v. Emerick* (June 6, 1997), Montgomery App. No. 15768, 1997 WL 309412 (*"Emerick I"*), as follows:

{¶ 3} "In March, 1994, the bodies of Robert Knapke and Frank Ferraro were found in Sloopy's bar in Dayton. According to the coroner, Knapke and Ferraro died from blunt-force injuries to their heads, consistent with blows from a hammer. The police discovered that a safe and a two-wheeled dolly were missing from the bar and that a cigarette vending machine in the bar had been broken into.

{¶ 4} "Emerick was arrested on March 27, 1994, based upon two active warrants unrelated to the murders. One warrant from Dayton was for a traffic offense, while the other warrant, for Assault, was from Kettering. Emerick was booked into the Montgomery County Jail at 12:01 a.m. on March 28, 1994. He made an initial appearance in Dayton Municipal Court that morning, and the Dayton warrant was released. Emerick remained in custody on the Kettering warrant, which carried a three hundred dollar cash bond.

{¶ 5} " * * * An indictment was filed in August 1994, charging Emerick with one count of Aggravated Robbery in violation of R.C. 2911.01(A)(2), and two counts of Aggravated Murder in violation of R.C. 2903.01(B). The two Aggravated Murder charges carried three death penalty specifications.

{¶ 6} "In October 1994, Emerick filed a motion seeking suppression of any statements or physical evidence garnered by the police during his detention on March 28, 1994, as well as any evidence obtained during the search of his home and vehicle. The motion was denied after an evidentiary hearing.

{¶ 7} "Following trial, a jury found Emerick guilty of all charges and specifications and recommended life imprisonment, rather than a sentence of death. The trial court sentenced Emerick accordingly."

{¶ 8} In 1997, we affirmed Emerick's conviction and sentence. See *Emerick I* (June 6, 1997), Montgomery App. No. 15768, 1997 WL 309412. Approximately eight years later, on October 28, 2005, Emerick filed an application for postconviction DNA testing with the trial court. In his application, Emerick requested that the trial court allow certain items of evidence accumulated prior to and during the trial to be tested in order to exclude him as the donor of any genetic material at the scene of the crime and to demonstrate the presence of a third party's DNA that does not belong to either of the victims. Emerick also requested that articles of clothing he was wearing when he was arrested be tested to demonstrate that any blood on the clothing was his own, and not the victims, as the state had suggested at trial. It is undisputed that there was no DNA evidence presented at trial that linked Emerick to the murder of Knapke and Ferraro.

{¶ 9} The trial court overruled Emerick's application for postconviction DNA testing in a decision and entry filed on February 9, 2006. In its decision, the trial court held that pursuant to R.C. 2953.74, any DNA testing of the named evidence would not be outcome determinative of a not-guilty finding at trial. It is from this judgment that Emerick now appeals.

## II

{¶ 10} Emerick's sole assignment of error is as follows:

{¶ 11} "The lower court erred as a matter of law and as a matter of fact, and it misapplied O.R.C. §§ 2953.71–2953.83 in denying Edmund Emerick's properly filed application for DNA testing, where Emerick adequately demonstrated that the results of exclusionary DNA testing would have been outcome determinative at trial."

{¶ 12} In his sole assignment of error, Emerick contends that the trial court erred when it overruled his application for postconviction DNA testing. Emerick argues that he should be allowed to test the following items for DNA: (1) fingernail scrapings of the victims, (2) swabs of blood taken from the bathroom wall in Sloopy's Bar, (3) genetic material on the hammer and screwdriver bits used to murder Knapke and Ferraro, (4) blood stains found on Emerick's jacket cuff and shoe, and (5) stains on the carpet of Emerick's motor vehicle. Emerick argues that if these items were to be tested for DNA, the results will demonstrate the presence of a third unknown person at the crime scene other than the two victims. Emerick further asserts that DNA testing of the genetic material

on the above items will effectively demonstrate that he was not present at the bar when the murders were committed, and thus, could not have been the perpetrator of the crimes. Because DNA test results excluding Emerick as the source of the biological material would be outcome determinative, we hold that the trial court abused its discretion when it rejected his application.

{¶ 13} R.C. 2953.74(A) provides that the trial court "has discretion, on a case-by-case basis," to accept or reject an eligible inmate's application for DNA testing. Thus, we review the trial court's decision for abuse of discretion.

{¶ 14} An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. When applying the abuse-of-discretion standard, an appellate court may not merely substitute its judgment for that of the trial court. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.

{¶ 15} Advances in DNA testing prompted the General Assembly in 2003 to enact R.C. 2953.71 through 2953.83. The statutes permit an eligible prison inmate who has been convicted of a felony and who has at least a year remaining on his prison term to file with the common pleas court a postconviction application for DNA testing of biological evidence upon which no DNA test, or an inconclusive DNA test, has been conducted. See R.C. 2953.71(F), 2953.72(A) and (C), 2953.73(A), and 2953.74(A) and (B). The trial court may "accept" an eligible inmate's application for DNA testing only if the following factors are present: (1) biological material was collected from the crime scene or the victim(s), and the parent sample of that biological material still exists; ( 2) the parent sample of the biological material is sufficient, demonstrably uncorrupted, and scientifically suitable for testing; (3) the identity of the perpetrator of the charged offense was an issue at the inmate's trial; (4) a defense theory at trial was such that it would permit a conclusion that an "exclusion result will be outcome determinative"; and (5) "if DNA testing is conducted and an exclusion result is obtained, the results of the testing would be outcome determinative." See R.C. 2953.74(B) and (C).

{¶ 16} If any of the factors listed in R.C. 2953.74(C) is not satisfied, the court is precluded from accepting the application. "In other words, if the court finds, for example, that the identity of the perpetrator was not an issue at trial, DNA testing will not be allowed, even if all [of] the other criteria are satisfied. Likewise, if the court finds that the test would not be outcome determinative, the application must be rejected." *State v. Hayden* (Aug. 5, 2005), Montgomery App. No. 20747, 2005-Ohio-4025, 2005 WL 1846521.

{¶ 17} In its written decision, the trial court rejected Emerick's application on two bases. First, the court stated that Emerick's application failed

because pursuant to R.C. 2953.74(B)(1), DNA testing was generally accepted and available at the time of his trial, and he failed to request that DNA testing be performed on the evidence at that time. The court found that Emerick presented no evidence in his application that DNA testing was not accepted and available at the time of his trial. The trial court points out that two pieces of evidence, Emerick's jacket cuff and shoe, were tested for DNA. Although, the results of the DNA tests on those items were inconclusive, the court found that Emerick could have requested that the other items be tested.

{¶ 18} Emerick contends that the available technology in DNA testing in 1996 was insufficient to reach the definitive results now possible using Y–Chromosome Short Tandem Repeat ("Y–STR") DNA Analysis. It is undisputed that Y–STR analysis was not available at the time of Emerick's trial. Moreover, it was partially the development of Y–STR technology that prompted the General Assembly to enact R.C. 2953.71 through 2953.83 in order to allow otherwise qualified inmates the opportunity to take advantage of advances in technology that were not available at the time of their trials. Emerick's case falls squarely under that category. While it is true that DNA testing was an accepted practice at the time of his trial, the technology has advanced to such a degree that Emerick is entitled to additional testing using the new technique. Because Y–STR DNA analysis was not available at the time of his prosecution, the biological materials Emerick seeks to be tested are eligible for analysis pursuant to R.C. 2953.74(B)(1).

{¶ 19} The trial court also stated that R.C. 2953.74(B)(2) does not provide a basis upon which Emerick's application for DNA testing could withstand rejection. R.C. 2953.74 states:

{¶ 20} "(B) If an eligible inmate submits an application for DNA testing under section 2953.73 of the Revised Code, the court may accept the application only if one of the following applies:

{¶ 21} "(2) The inmate had a DNA test taken at the trial stage in the case in which the inmate was convicted of the offense for which the inmate is an eligible inmate and is requesting the DNA testing regarding the same biological evidence that the inmate seeks to have tested, the test was not a prior definitive DNA test that is subject to division (A) of this section, and the inmate shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject inmate's case as described in division (D) of this section would have been outcome determinative at the trial stage in that case."

{¶ 22} The trial court stated that "the only evidence tested at the trial stage that did not yield a definitive result were the blood stains on Defendant's T-shirt and shoes." The language used by the trial court leads to the inference that

other items of evidence were tested for DNA and yielded definitive results. This is not the case, however. No other items were tested for DNA. The trial court also found that even if all the items were analyzed for the DNA they might contain, and Emerick was excluded as the donor of some or all of the genetic material, that result would not be outcome determinative of his innocence. We disagree.

{¶ 23} "Outcome determinative" is defined in the postconviction DNA testing statutes to mean:

{¶ 24} "[H]ad the results of DNA testing been presented at the trial of the subject inmate requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the inmate is an eligible inmate and is requesting the DNA testing * * *, no reasonable factfinder would have found the inmate guilty of that offense * * *." R.C. 2953.71(L).

{¶ 25} The state's theory at trial was that the offenses which took place at Sloopy's bar on the day in question were committed by a single perpetrator. There was no DNA evidence that placed Emerick at the scene of the crime, and he maintained his innocence throughout the trial. He contends that DNA testing of the fingernail scrapings of the victims, the swabs of blood on the bathroom walls, and the genetic material on the murder weapons will demonstrate the existence of a third party at the crime scene whose DNA does not match Emerick's or that of the two victims. Emerick argues that if the genetic material does not match his DNA or that of the victims, then the isolated DNA must belong to another donor. If the unidentified donor's DNA is located on different evidentiary items, that individual would be the actual murderer. Under this scenario, DNA analysis of the requested evidentiary items would clearly be outcome determinative with respect to the question of Emerick's guilt. The existence of a third party who committed the murders and robbery would exonerate Emerick. Thus, pursuant to R.C. 2953.74(B)(2), Emerick is entitled to Y–STR DNA analysis of the identified evidentiary items.

{¶ 26} Emerick's sole assignment of error is sustained.

### III

{¶ 27} Emerick's sole assignment of error having been sustained, the judgment of Montgomery County Court of Common Pleas is reversed, and this matter is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BROGAN and FAIN, JJ., concur.