The STATE of Ohio, Appellee,

v.

REYNOLDS, Appellant.

[Cite as *State v. Reynolds,* 186 Ohio App.3d 1, 2009-Ohio-5532.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23163.

Decided Oct. 16, 2009.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Michele D. Phipps, Assistant Prosecuting Attorney, for appellee.

Ohio Innocence Project, College of Law, University of Cincinnati, Mark Godsey, and Jennifer Paschen Bergeron, for appellant.

DONOVAN, Presiding Judge.

{¶ 1} Defendant-appellant, Dwight Lane Reynolds, appeals a decision of the Montgomery County Court of Common Pleas that overruled his application for postconviction deoxyribonucleic acid ("DNA") testing. Reynolds filed his memorandum in support of his application for postconviction DNA testing on February 13, 2008. On April 29, 2008, the state filed its responsive brief. Reynolds filed a reply to the state's memorandum on May 23, 2008. The trial court filed its decision and entry overruling Reynolds's application on November 25, 2008. Reynolds filed a notice of appeal with this court on December 22, 2008.

I

{¶ 2} We set forth the history of the case in *State v. Reynolds*, Montgomery App. No. 19083, 2002-Ohio-5594, 2002 WL 31341558, ¶ 2–5, and now repeat it here:

{¶ 3} "On October 10, 2000, at approximately 11:30 a.m., Jerilynn Bachey was attacked as she sat in her car in the parking lot of a dentist's office on Salem Avenue. Bachey's car door was open as the attacker approached from the rear of the car and tried to grab her. As Bachey kicked her attacker from inside the car, he pulled a knife and stabbed her in the chest. She then grabbed the knife, and her hand was cut as she got the knife away from her attacker. After a brief struggle, Bachey managed to push past her attacker and run into the dental office. She was transported to a hospital, where she stayed for several days.

{¶ 4} "David Stanley, a man who was working in the dental office, ran outside immediately when Bachey told him what had happened. Stanley saw a man sitting in Bachey's car in the parking lot. When the man stood up outside the car he was holding a purse or fanny pack. Stanley saw the man clearly, and the man stated that he had a pistol. Stanley then moved back toward the dental office, and the man fled.

{¶ 5} "After the attack, Bachey and Stanley viewed several photospreads on two different dates. On October 31, Bachey looked at a photospread in which Reynolds' picture appeared. She told the detective that she thought that Reynolds was her attacker but that she was not one hundred percent sure. When Stanley looked at the same photospread, he stated that he was one hundred percent sure that Reynolds was the man he had seen getting out of Bachey's car.

{¶ 6} "Reynolds was arrested on November 1, 2000. He was subsequently indicted for aggravated robbery and felonious assault. Reynolds was tried by a

jury in September 2001 and was convicted on both counts. He was sentenced to ten years in prison for the aggravated robbery and to eight years in prison for the felonious assault, to be served consecutively."

{¶ 7} In 2002, we affirmed Reynolds's conviction and sentence. Id. Approximately six years later, on February 13, 2008, Reynolds filed an application for postconviction DNA testing with the trial court. In his application, Reynolds requested that the trial court allow certain items of evidence accumulated prior to and during the trial to be tested in order to exclude him as the source of any genetic material at the scene of the crime and to demonstrate the presence of a third party's DNA that does not belong to the victim. Although DNA testing was available at the time of his arrest and trial, neither Reynolds nor his counsel requested that any of the evidentiary items be tested for the presence of DNA. Additionally, none of the physical evidence taken from the scene, including fingerprints, was linked to Reynolds.

{¶ 8} The trial court overruled Reynolds's application for postconviction DNA testing in a decision and entry filed on November 25, 2008. In its decision, the trial court held that pursuant to R.C. 2953.74, any DNA testing of the named evidence would not be "outcome determinative" of his innocence at trial. It is from this judgment that Reynolds now appeals.

## II

{¶ 9} "The trial court erred by focusing on the likelihood that the evidence is in a condition that will allow a testing authority to obtain results from DNA tests rather than acknowledging that DNA test results that simultaneously exclude appellant and identify an alternative suspect would be outcome-determinative."

{¶ 10} In his sole assignment of error, Reynolds contends that the trial court erred when it overruled his application for postconviction DNA testing. Reynolds argues that he should be allowed to test the following items for the DNA they contain: (1) a hooded jacket allegedly worn by the perpetrator of the felonious assault, (2) blood samples taken from the interior of the victim's vehicle, (3) fingerprints left in the victim's vehicle for the presence of skin cells containing DNA, (4) the knife that was used by the perpetrator of the felonious assault, and (5) the victim's purse. Since he has consistently denied any involvement in the crime whatsoever, Reynolds argues that if those items were to be tested for DNA, the results would demonstrate the presence of a third unknown person who actually committed the crimes. Because it is undisputed that no physical evidence was found at the scene that linked Reynolds to the crimes, DNA test results implicating a third party as the source of the biological material would be outcome-determinative, and thus, we hold that the trial court abused its discretion when it rejected his application.

{¶ 11} R.C. 2953.74(A) provides that the trial court "has the discretion, on a case-by-case basis" to accept or reject an eligible inmate's application for DNA testing. Thus, we review the trial court's decision for abuse of discretion.

{¶ 12} "Abuse of discretion" means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. When applying the abuse-of-discretion standard, an appellate court may not merely substitute its judgment for that of the trial court. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.

{¶ 13} Advances in DNA testing prompted the General Assembly in 2003 to enact R.C. 2953.71 through 2953.83. The statutes permit an eligible prison inmate who has been convicted of a felony and who has at least a year remaining on his prison term to file with the common pleas court a postconviction application for DNA testing of biological evidence upon which no DNA test, or an inconclusive DNA test, has been conducted. See R.C. 2953.71(F), 2953.72(A) and (C), 2953.73(A), and 2953.74(A) and (B). The trial court may "accept" an eligible inmate's application for DNA testing only if the following factors are present: (1) biological material was collected from the crime scene of the victim(s), and the parent sample of that biological material still exists, (2) the parent sample of the biological material is sufficient, demonstrably uncorrupted, and scientifically suitable for testing, (3) the identity of the perpetrator of the charged offense was an issue at the inmate's trial, (4) a defense theory at trial was such that it would permit a conclusion that an "exclusion result would be outcome determinative," and (5) "if DNA testing is conducted and an exclusion result is obtained, the results of the testing would be outcome determinative." R.C. 2953.74(B) and (C).

{¶ 14} "Outcome determinative" is defined in the postconviction DNA testing statutes to mean that "had the results of DNA testing * * * been presented at the trial of the subject inmate requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the inmate is an eligible inmate and is requesting the DNA testing * * * under section 2953.82 of the Revised Code, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the inmate's case as described in division (D) of section 2953.74 of the Revised Code, there is a strong probability that no reasonable factfinder would have found the inmate guilty of that offense * * *." R.C. 2953.71(L).

{¶ 15} If any of the factors listed in R.C. 2953.74(C) is not satisfied, the court is precluded from accepting the application. "In other words, if the court finds, for example, that the identity of the perpetrator was not an issue at trial, DNA testing will not be allowed, even if all the other criteria are satisfied. Likewise, if the court finds that the test would not be outcome determinative, the application

must be rejected." *State v. Hayden*, Montgomery App. No. 20747, 2005-Ohio-4025, 2005 WL 1846521, ¶ 19. It is the responsibility of the "testing authority," however, not the trial court, to determine whether the parent sample of the biological evidence collected is of sufficient quantity and in suitable scientific condition to be submitted for testing. R.C. 2953.74(C)(2)(a), (b), and (c).

{¶ 16} In its decision, the trial court pointed out that Reynolds declined DNA testing of evidentiary materials during the initial trial when "DNA testing was available and generally accepted and the results of the testing were generally admissible in evidence." The state argues that as a result of Reynolds's failure to request DNA testing, he is now legally precluded from obtaining testing under R.C. 2953.71 through 2953.83. We disagree.

{¶ 17} Reynolds asserts that there have been several advancements in DNA testing since his trial. Specifically, Reynolds identifies three types of DNA testing that have been developed since his trial, namely, Y–STR, mini-STR, and touch DNA. Y–STR testing allows DNA technicians to differentiate between male and female DNA from a mixed source, and mini-STR and touch DNA permit technicians to obtain a DNA profile from very small, degraded, and compromised samples.

{¶ 18} In *State v. Emerick*, 170 Ohio App.3d 647, 2007-Ohio-1334, 868 N.E.2d 742, we stated: "While it is true that DNA testing was an accepted practice at the time of his trial, the technology has advanced to such a degree that Emerick is entitled to additional testing using the new technique. Because Y–STR DNA analysis was not available at the time of his prosecution, the biological materials Emerick seeks to be tested are eligible for analysis pursuant to R.C. 2953.74(B)(1)." In addition to Y–STR DNA analysis, mini-STR and touch DNA are also now available for use by Reynolds. By enacting R.C. 2953.71 through 2953.83, the General Assembly chose to allow otherwise qualified inmates the opportunity to take advantage of advances in technology that were not available at the time of their trials. *Emerick*, 170 Ohio App.3d 647, 2007-Ohio-1334, 868 N.E.2d 742. Thus, we find that the evidentiary materials Reynolds seeks to be tested are eligible for analysis pursuant to R.C. 2953.74(B)(1).

{¶ 19} Reynolds argues that DNA testing of the aforementioned evidence would be outcome-determinative because it would establish that Reynolds was not at the crime scene. More importantly, Reynolds asserts that while DNA testing could exclude his presence from the scene, it could also reveal the presence of an unknown third party. Once the third party's DNA is uncovered, the postconviction DNA testing statute specifically permits an applicant to have the unknown DNA result uploaded into the Combined DNA Index System ("CODIS") in order to search for a match to a known felon. R.C. 2953.74(E). Should the unknown individual's DNA match that of a known felon, Reynolds contends, that result would be outcome-determinative by establishing that he did not commit the

felonious assault and aggravated burglary. Reynolds also argues that if an unknown individual's DNA were to be found on more than one piece of evidence, that result would be outcome-determinative in establishing that Reynolds was not the perpetrator.

{¶ 20} In its decision overruling Reynolds's application for postconviction DNA testing, the trial court improperly focused on the probability that the testing authority would be unable to obtain a DNA result from the evidence taken from the crime scene. The trial court stated that the victim's purse and the hooded jacket were found several months after the attack and had been exposed to the elements before they were found. The trial court also found that blood discovered in the victim's car could not be the attacker's because there was no evidence that the attacker was cut or bleeding during the attack. The court agreed with the state that the trace amounts of blood found on the knife were insufficient for testing, and the fingerprints would also provide insufficient materials for testing because the DNA would have been "removed or contaminated" by the police who were testing for fingerprints. The court held that even if DNA were found on the knife, it would not be outcome-determinative.

{¶ 21} As we have already noted, however, the job of determining whether the parent sample of the biological evidence collected is of sufficient quantity and in suitable scientific condition to be submitted for testing belongs to the "testing authority" and not the trial court. R.C. 2953.74(C)(2)(a), (b), and (c). Simply put, the testing authority or laboratory is tasked with determining whether a sufficient amount of usable DNA exists to complete the testing. When it drew its negative conclusions regarding the sufficiency and suitability of the evidence for DNA testing, the trial court abused its discretion by overstepping the authority granted to it by the DNA testing statutes. These conclusions were based upon the state's memorandum and not the opinions rendered by a licensed testing authority. Further, we agree with Reynolds that the absence of his DNA and the simultaneous presence of a known felon's DNA from CODIS would create a strong probability of a different outcome. Thus, pursuant to R.C. 2953.74(B)(2), Reynolds is entitled to DNA analysis of the identified evidentiary items.

{¶ 22} Reynolds's sole assignment of error is sustained.

## III

{¶ 23} Reynolds's sole assignment of error having been sustained, the judgment of Montgomery County Court of Common Pleas is reversed, and this matter is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

FROELICH and WOLFF, JJ., concur.

WILLIAM H. WOLFF JR., J., retired, of the Second District Court of Appeals, sitting by assignment.