[Cite as *State v. Johnson*, 2014-Ohio-2646.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 100503

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ANTHONY JOHNSON

DEFENDANT-APPELLANT

---

### JUDGMENT:
### REVERSED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-00-397780

**BEFORE:**   Blackmon, J., Rocco, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:**   June 19, 2014

**ATTORNEYS FOR APPELLANT**

Jennifer P. Bergeron
Mark A. Godsey
Ohio Innocence Project
University of Cincinnati
P.O. Box 210040
Cincinnati, Ohio 45221

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Mary H. McGrath
Assistant County Prosecutor
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1} Johnson appeals the trial court's denial of his application for postconviction DNA testing and assigns the following three errors for our review:

I. The trial court erred by holding that the results of post-conviction DNA testing would not be outcome determinative when test results could reveal the absence of appellant's DNA and the simultaneous presence of another felon's DNA.

II. The trial court erred by denying DNA testing to appellant because the statute contemplates testing given the advances in DNA technology since his trial.

III. The trial court erred by failing to explain the reasons for denying appellant's request for DNA testing as required by R.C. 2953.73(D).

{¶2} Having reviewed the record and pertinent law, we reverse the trial court's decision and remand for proceedings consistent with this opinion. The apposite facts follow.

{¶3} Johnson was indicted in three cases that were consolidated and tried to the bench on May 23, 2001. Two of the cases concerned the robbery of women in downtown parking lots, and one of the cases concerned the robbery of a woman in a Parma parking lot.

{¶4} In all three cases, the victims identified Johnson from either a photo array, live line-up, or both. Prior to the joint trial, Johnson filed a motion to suppress the victims' identification evidence, contending that he was wrongly identified by the victims and that Frederick Norman was the perpetrator of the crimes. The basis for his argument was that around the same time as the robberies, Cleveland Police were investigating another string of downtown robberies and eventually arrested and charged Frederick

Norman for these other robberies. Norman entered a guilty plea to those robberies. The trial court denied the motion to suppress.

{¶5} Johnson is only requesting the DNA testing for CR-397780 for which he was indicted for three counts each of kidnapping and aggravated robbery. In that case, on October 9, 2000 at 2:30 p.m., three women left their court reporting class on Superior Avenue and walked to one of the women's vehicle. The victims testified that they were robbed by a single perpetrator who after taking their money forced them to drive to the area of East 40th and Central Avenue where he exited the vehicle. They described the robber as wearing a grey and maroon windbreaker and a green polo cap. Officers canvassed the area and discovered the described clothing near the bushes of a vacant house.

{¶6} Two of the victims immediately picked Johnson out of the photo array and all three victims identified Johnson from a live line-up. At trial, the victims stated that they had no doubt that Johnson was the person that robbed them. The driver of the car stated that she was able to look at him from her rearview mirror as she drove and that she made eye contact with him after dropping him off. She recalled that his lips were "very pink," although she never told officers about this observation. Evidence was also presented at trial that Johnson was excluded as a contributor to the DNA from the hair found on the cap.

**{¶7}** The trial court found Johnson guilty of all counts in the October 9, 2000 robbery.[1] In *State v. Johnson*, 8th Dist. Cuyahoga No. 79831, 2002-Ohio-1661, this court affirmed Johnson's convictions but reversed and remanded for resentencing.

**{¶8}** In April 2002, Johnson filed a pro se motion for a new trial claiming newly discovered evidence. Attached to his motion was the affidavit of Frederick Norman, who stated that he, not Johnson, committed the September 15, 2000 aggravated robbery. The September 15 robbery is not the subject of the instant appeal. His motion for a new trial was denied because the evidence from that case showed that there were two men involved in committing the crime.

**{¶9}** On May 14, 2002, Johnson filed a pro se application for DNA testing, with an affidavit attached from Frederick Norman, admitting to committing the October 9, 2000 robbery. Johnson requested that DNA testing of the windbreaker, cap, and the hair strand recovered from the cap be compared with Norman's DNA. On July 1, 2002, the trial court denied the application without opinion. Johnson did not appeal the trial court's denial.

**{¶10}** On October 1, 2002, Johnson filed a pro se motion for a new trial regarding the October 9, 2000 robbery based on Norman's confession, but attached Norman's affidavit in which he confessed to committing the September 15, 2000 robbery, which

---

[1]The trial court also found Johnson guilty of kidnapping and aggravated robbery in CR-400550, for robbing two women in a downtown parking lot on September 15, 2000. Johnson was also found guilty in CR-399616 of robbery, kidnapping, gross sexual imposition, and receiving stolen property regarding the robbery of a woman in a Parma parking lot.

involved two robbers, not the affidavit in which he confessed to the October 9, 2000 robbery. The court denied the motion on November 21, 2002, and the decision was affirmed on appeal. *State v. Johnson*, 155 Ohio App.3d 145, 2003-Ohio-5637, 799 N.E.2d 650 (8th Dist.). In October 2004, Johnson filed a second pro se application for DNA testing, requesting the same testing as he had requested in the first application. The trial court denied his second request, and Johnson did not appeal the decision.

{¶11} On February 8, 2013, Johnson, with the help of the Ohio Innocence Project, filed a third application for DNA testing. Johnson argued that res judicata did not prevent his third application for DNA testing because in 2006, S.B. 262 altered the DNA statute by lowering the burden to meet the definition of "outcome determinative" and that advances in DNA testing would allow the testing of a hair without a root, and possible other DNA could be recovered and tested on the cap and jacket.

{¶12} The trial court denied Johnson's application for postconviction DNA testing, stating as follows:

> Defendant's application for DNA testing is denied. The application fails to satisfy the statutory requirements for acceptance under Ohio R.C. 2953.74(B)(1) since he did not request or have DNA testing at the trial stage, DNA testing was available. Furthermore, under Ohio R.C. 2953.74(B)(1) and (C)(5), Johnson fails to demonstrate the statutory requirement that DNA testing could be outcome determinative, such that in

light of all available evidence there would be a strong possibility that this court would not have found him guilty.

Journal Entry, September 11, 2013.

## R.C. 2953.74(B)(1) and (B)(2)

{¶13} We will address Johnson's second assigned error first. In his second assigned error, Johnson argues that the trial court erred by finding that he did not satisfy the criteria of R.C. 2953.74(B)(1).

{¶14} We review the trial court's decision to accept or reject an eligible inmate's application for DNA testing for an abuse of discretion. R.C. 2953.74(A); *State v. Ayers*, 185 Ohio App.3d 168, 2009-Ohio- 6096, 923 N.E.2d 654 (8th Dist.), ¶ 12. An abuse of discretion is "more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶15} R.C. 2953.74(B) states that "[i]f an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code, the court may accept the application only if one of the following applies":

(1) The offender did not have a DNA test taken at the trial stage in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing regarding the same biological evidence that the offender seeks to have tested, the offender shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject offender's case as described in division (D) of this section would have been outcome determinative at that trial stage in that case, and, at the time of the trial stage in that case, DNA testing was not generally accepted, the results

of DNA testing were not generally admissible in evidence, or DNA testing was not yet available.

(2) The offender had a DNA test taken at the trial stage in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing regarding the same biological evidence that the offender seeks to have tested, the test was not a prior definitive DNA test that is subject to division (A) of this section, and the offender shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject offender's case as described in division (D) of this section would have been outcome determinative at the trial stage in that case.

{¶16} Johnson's application falls within the purview of R.C. 2953.74(B)(1) because while Johnson's DNA was tested and compared to the human hair discovered on the polo cap, Johnson did not request that Norman's DNA be tested during the trial stage. Nor did he request that the clothing be tested for other DNA. We conclude Johnson fulfilled the requirement, which requires that "at the time of the trial stage in that case, DNA testing was not generally accepted, the results of DNA testing were not generally admissible in evidence, or DNA testing was not yet available."

{¶17} The state argues that DNA testing was available at the time of Johnson's trial. However, DNA testing has drastically evolved since that time. In *State v. Reynolds*, 186 Ohio App.3d 1, 2009-Ohio-5532, 926 N.E.2d 315 (2d Dist.), the Second District addressed the advancement of DNA testing compared to the testing that was available at the time of the defendant's trial in September 2001. Notably, the trial in *Reynolds* was six months after Johnson's trial. The *Reynolds* court held:

In its decision, the trial court pointed out that Reynolds declined DNA testing of evidentiary materials during the initial trial when "DNA testing was available and generally accepted and the results of the testing were

generally admissible in evidence." The State argues that as a result of Reynolds's failure to request DNA testing, he is now legally precluded from obtaining testing under R.C. § 2953.71 through R.C. § 2953.83. We disagree.

Reynolds asserts that there have been several advancements in DNA testing since his trial. Specifically, Reynolds identifies three types of DNA testing that have been developed since his trial, namely Y-STR, mini-STR, and touch DNA. While Y-STR testing allows DNA technicians to differentiate between male and female DNA from a mixed source, mini-STR and touch DNA permit technicians to obtain a DNA profile from very small degraded, and compromised samples.

In *State v. Emerick*, 170 Ohio App.3d 647, 2007-Ohio-1334, 868 N.E.2d 742, we found that "[w]hile it is true that DNA testing was an accepted practice at the time of his trial, the technology has advanced to such a degree that Emerick is entitled to additional testing using the new technique. Because Y-STR DNA analysis was not available at the time of his prosecution, the biological materials Emerick seeks to be tested are eligible for analysis pursuant to R.C. § 2953.74(B)(1)." In addition to Y-STR DNA analysis, mini-STR and touch DNA are also now available for use by Reynolds. By enacting R.C. § 2953.71 through R.C. § 2953.83, the General Assembly chose to allow otherwise qualified inmates the opportunity to take advantage of advances in technology that were not available at the time of their trial. *Emerick*, 170 Ohio App.3d 647, 2007-Ohio-1334, 868 N.E.2d 742. Thus, we find that the evidentiary materials Reynolds seeks to be tested are eligible for analysis pursuant to R.C. § 2953.74(B)(1).

*Id.* at ¶ 17-19.

**{¶18}** Additionally, this court in *State v. Ayers*, 185 Ohio App.3d 168, 2009-Ohio-6096, 923 N.E.2d 654 (8th Dist.), acknowledged the evolvement of DNA testing. In that case, the defendant was brought to trial approximately six months prior to Johnson's trial; therefore, the DNA evidence in existence at the time was similar to that existing at the time of Johnson's trial. In *Ayers*, we concluded that the trial court erred in denying Ayers's application and held that the more sophisticated DNA testing available now, was not available at the time of the defendant's trial. *Id.* at ¶ 30.

**{¶19}** The state cites to a case from the Sixth Circuit, which indicated that mitochondrial DNA testing was available in a trial conducted in federal court in 2000. However, it does not appear, based on the fact that there is limited case law, that the testing was widely used or accepted. Moreover, the state concedes that the Y-STR testing was not available at the time of Johnson's trial. As we acknowledged in *Ayers*, "refinements in testing" could reveal biological material in 2009 that could not have been discovered 10 years earlier. *Id.* at ¶ 42.

**{¶20}** Here, testing the jacket and cap that were worn by the robber, could reveal additional DNA by testing for DNA in biological material such as sweat or skin cells. The DNA can then be compared to Norman's DNA or the DNA in the Combined DNA Index System ("CODIS"). Similarly, in *State v. Noling*, 136 Ohio St.3d 163, 2013-Ohio-1764, 992 N.E.2d 1095, the defendant had identified alternative suspects and requested DNA testing that was not available at the time of trial. The trial court denied

the defendant's application. The Ohio Supreme Court reversed the trial court stating: "The trial court failed to consider Noling's application in the context of the new statutory requirements—whether there is a possibility of discovering new biological material that is potentially from the perpetrator that the prior DNA test may have failed to discover." Thus, the use of new DNA testing to discover new biological material that was previously undiscoverable, is grounds for granting the application.

{¶21} Like in *Ayers*, Johnson is also bearing the cost of DNA testing through non-public means; therefore, testing will not financially burden the state. Accordingly, Johnsons's second assigned error is sustained.

## **Outcome Determinative**

{¶22} In his first and third assigned errors, Johnson argues that the trial court erred by concluding the testing would not be outcome determinative and by failing to set forth more explicit reasons in its journal entry.

{¶23} In addition to being required to show that testing was not available at the time of trial, the inmate must show that the DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the defendant's case would have been outcome determinative at the trial in that case. R.C. 2953.74(B)(1).

> R.C. 2953.71 provides that "outcome determinative" means that "had the results of DNA testing of the subject inmate been presented at the trial of the subject inmate requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the inmate is an eligible inmate and is requesting the DNA testing or for which the inmate is requesting the DNA testing under section 2953.82 of the Revised Code, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the inmate's case as described in

division (D) of section 2953.74 of the Revised Code, **there is a strong probability that no reasonable factfinder would have found the inmate guilty of that offense** * * *." R.C. 2953.71(L).   (Emphasis added sic.)

*State v. Prade*, 126 Ohio St.3d 27, 2010-Ohio-1842, 930 N.E.2d 287.

{¶24} Thus, the term "outcome determinative" is a conclusion based upon consideration of all the available evidence.  The trial court found that the DNA testing would not be outcome determinative based on the evidence.  We conclude the trial court erred in making this conclusion.

{¶25} The case for which Johnson is requesting the DNA testing only concerned the robbery on October 9, 2000.  In that case, the victims testified that there was only one perpetrator and described the clothing he wore, which was later recovered.  We understand that the victims picked Johnson out of a live line up and photo array, however, if his DNA is not on the clothing but Norman's is, this would make the victims' identification suspect, especially because Norman has confessed to committing this robbery.

{¶26} Thus, we conclude that the DNA testing would be outcome determinative. If Norman's DNA is located on the hat and jacket but Johnson's DNA is not found on the hat and jacket, the DNA evidence along with Norman's confession, would point to Norman as the perpetrator of the crime.

{¶27} Although the trial court could have been more explicit in explaining its reasons why the DNA testing would not be outcome determinative, we conclude given the confession by Norman and the fact there was only one perpetrator to the robbery, any

decision that the testing would not be outcome determinative would be erroneous. Accordingly, Johnson's first and third assigned errors are sustained.

**{¶28}** Judgment is reversed and remand for proceedings consistent with this opinion.

It is ordered that appellant recover of appellee his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON,   JUDGE

KENNETH A. ROCCO, P.J., and
TIM McCORMACK, J., CONCUR