[Cite as *State v. Upton*, 2015-Ohio-3341.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101815**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## BRENT UPTON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-97-352488-A

**BEFORE:** Celebrezze, A.J., Stewart, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 20, 2015

**ATTORNEYS FOR APPELLANT**

Brian Howe
Mark A. Godsey
Ohio Innocence Project
University of Cincinnati College of Law
P.O. Box 210040
Cincinnati, Ohio 45221


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Daniel T. Van
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, Ohio   44113

FRANK D. CELEBREZZE, JR., A.J.:

{¶1} Appellant, Brent Upton, appeals the denial of his application for DNA testing relating to his 1997 conviction for the first-degree murder of his girlfriend, Sonja Holivay. He argues that the court abused its discretion in denying his application. After a thorough review of the record and law, this court affirms the decision of the trial court.

## I. Factual and Procedural History

{¶2} The history of this case has previously been recited by this court in *State v. Upton*, 8th Dist. Cuyahoga No. 73611, 1999 Ohio App. LEXIS 1037 (Mar. 18, 1999) ("*Upton I*"). A brief synopsis of the pertinent facts, as previously recited by this court, is as follows: On June 25, 1997, the body of Sonja Holivay was discovered in her apartment. She had several knife wounds, including an incision to her throat. However, the coroner who testified at trial indicated Holivay had been strangled to death, and the wounds were an apparent attempt at making it look as though Holivay committed suicide. Tora Williams occupied the apartment across the hallway from Holivay. Williams testified at trial that she observed appellant and Maurice Calhoun enter Holivay's apartment in the early morning hours of June 25, 1997. She said the door to the apartment was left open. Williams was looking through the peephole of her door into Holivay's apartment. Williams testified she observed Holivay in the bathroom at the end of a long hallway. She heard the toilet flush twice and then heard appellant shout about

the whereabouts of items, the implication being that Holivay had flushed appellant's drugs.[1] Williams testified that appellant then grabbed Holivay's neck. He removed something shiny from his pocket. After that, she observed Holivay slumped down on the floor. Appellant and Calhoun then left the apartment. *Id*. at *5-11.

{¶3} Appellant asserts significant forensic evidence was gathered from the scene of Holivay's murder, which is summarized below.

{¶4} Two fingerprints were found on a knife recovered from the bathroom. One partial print was not usable for comparison, and another, found on the blade of the knife, did not match appellant. Forensic experts also conducted DNA testing on the knife, a bandana found near the body, and various blood stains in the apartment. The resultant tests all determined that the blood found was consistent with the victim's. From a search of appellant's apartment, police also recovered clothes that contained stains determined to be human blood. The tests conducted on these clothes indicated the blood found was consistent with appellant's. DNA tests were conducted on blood stains found in the car in which appellant was traveling the night of the murder; however, they were inconclusive. Finally, a comforter that Williams testified appellant had wrapped around his waist during the murder was recovered and tested. The DNA tests of the blood that was found on the comforter were inconclusive. Sperm cells found on the comforter were

---

[1] Forensic testimony established that traces of a white powder substance in a dresser in the bedroom was cocaine.

determined to be likely contributed by appellant, and epithelial cells were found that likely came from a female other than Holivay.

{¶5} Appellant was convicted of the murder of Holivay and sentenced to a prison term of 15 years to life. He initiated an appeal, which was unsuccessful. *Upton I*, 8th Dist. Cuyahoga No. 73611, 1999 Ohio App. LEXIS 1037 (Mar. 18, 1999).

{¶6} On May 15, 2014, appellant filed an application for DNA testing and a memorandum in support. He requested that the knife recovered from Holivay's apartment, along with fingernail scrapings, and any other biological material recovered, be retested for DNA. Appellant argued that DNA analysis and testing had advanced significantly and updated techniques could provide proof of his innocence. Appellant attached an affidavit from an investigator hired by the Ohio Innocence Project. There, Paul Spurgeon averred that in 2011, he interviewed Williams and her daughter Tiffany. Spurgeon averred that Williams stated she did not witness the murder, but that Tiffany did. Williams stated that she thought she was allowed to testify to what her daughter witnessed as if Williams had witnessed it because her daughter was a minor at the time. Appellant asserted that Williams essentially recanted her testimony when she spoke to Spurgeon. Appellant also attached affidavits from two forensic experts detailing the advances in DNA testing and technology that could provide conclusive test results for samples that previously were inconclusive. The experts further averred that samples that were previously determined to contain only the victim's blood may be analyzed using modern techniques that may allow for the isolation of further DNA profiles.

**{¶7}** The state responded on July 18, 2014, arguing that appellant did not meet the necessary qualifications for DNA testing. On the same day, the court denied appellant's application without exposition other than to say that appellant failed to meet the prerequisites under the statutes.

**{¶8}** Appellant then timely filed the instant appeal raising one error for review: "The trial court erred in denying appellant access to DNA testing pursuant to R.C. 2953.71-84 and its equitable authority."

## II.   Law and Analysis

**{¶9}** This court reviews the trial court's decision granting or denying an application for DNA testing for an abuse of discretion. R.C. 2953.74(A). Such an abuse is denoted by a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶10}** The state of Ohio has bestowed upon those convicted of crimes who are still serving their sentences the ability to petition the appropriate common pleas court to test evidence recovered by police for DNA on which no DNA test was conducted or where results were inconclusive. R.C. 2953.72 through 2953.74. The statutory scheme requires the applicant to be an eligible offender as defined in R.C. 2953.72(C)(1), whose conviction would be cast in serious doubt by the results of new or additional DNA testing favorable to the applicant. The Revised Code speaks in terms of outcome determinative results, but the definition of that term has changed over time. "Outcome determinative" now means that

had the results of DNA testing of the subject inmate been presented at the trial * * * and been found relevant and admissible with respect to the felony offense for which the inmate * * * is requesting the DNA testing * * *, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the inmate's case * * *, there is a strong probability that no reasonable factfinder would have found the inmate guilty of that offense * * *.

R.C. 2953.71(L). "Strong probability" is a more relaxed standard than those found in previous iterations of the DNA testing statute. *State v. Ayers*, 185 Ohio App.3d 168, 2009-Ohio-6096, 923 N.E.2d 654, ¶ 22 (8th Dist.).

{¶11} Under the statutes, the court may order new or additional testing only if the applicant is able to show the following:

1) [b]iological material was collected from the crime scene of the victim(s), and the parent sample of that biological material still exists; 2) the parent sample of the biological material is sufficient, demonstrably uncorrupted, and scientifically suitable for testing; 3) the identity of the perpetrator of the charged offense was an issue at the inmate's trial; 4) a defense theory at trial was such that it would permit a conclusion that an "exclusion result would be outcome determinative"; and 5) "if DNA testing is conducted and an exclusion result is obtained, the results of the testing would be outcome determinative."

*State v. Emerick*, 170 Ohio App.3d 647, 2007-Ohio-1334, 868 N.E.2d 742, ¶ 15 (2d Dist.), citing R.C. 2953.74(B) and (C).

{¶12} Here, the first and second elements for a successful petition are not in dispute. Many biological samples were collected in this case, as asserted by appellant, and the state does not argue that

they no longer exist. The third element is also uncontested. The identity of Holivay's killer was in dispute, and appellant claims he maintained his innocence throughout trial.

{¶13} Regarding the fourth and fifth elements, appellant argues that advances in DNA testing and techniques can produce results for tests that were previously determined to be inconclusive. He also asserts that tests that isolated only the victim's DNA from samples are now more sophisticated and could result in isolating previously unknown DNA from blood collected at the crime scene.

{¶14} If the applicant requests testing of previously definitive samples, the court must reject the application. R.C. 2953.74(A). Here, appellant asserts there are no definitive test results that would preclude his application.

{¶15} A "definitive DNA test" is defined as follows:

> a DNA test that clearly establishes that biological material from the perpetrator of the crime was recovered from the crime scene and also clearly establishes whether or not the biological material is that of the eligible offender. A prior DNA test is not definitive if the eligible offender proves by a preponderance of the evidence that because of advances in DNA technology there is a possibility of discovering new biological material from the perpetrator that the prior DNA test may have failed to discover. Prior testing may have been a prior "definitive DNA test" as to some biological evidence but may not have been a prior "definitive DNA test" as to other biological evidence.

R.C. 2953.71(U). Appellant asserts that at trial, no test satisfied the first portion of this statute. The state does not appear to argue otherwise. We are left to take appellant's word for it because there is no transcript in the record before this court.

{¶16} Appellant uses the lack of a definitive test to argue that advances in DNA testing could provide an outcome determinative test, satisfying the fifth element above, and therefore, further testing should be granted in his case.

{¶17} The arguments appellant sets forth about advances in DNA testing sophistication were also made in *Ayers*, 185 Ohio App.3d 168, 2009-Ohio-6096, 923 N.E.2d 654 (8th Dist.). There, Ayers asserted DNA testing technology would now reveal DNA where older, less sophisticated DNA testing methods had detected none. *Id*. at ¶ 6. He also noted that a change in the statutory definition of "outcome determinative" would leave no question that subsequent DNA testing of the items from the crime scene would prove him innocent of the crimes for which he was convicted. *Id*. at ¶ 14. This court reversed the trial court's rejection of the application in *Ayers*. The court found advances in DNA testing, the availability of a federal DNA database, and the fact that the victim struggled with her killer but no DNA from Ayers was found on the victim were all important factors in overruling the trial court's denial. *Id*. at ¶ 43. However, the court noted that the mere passage of time and advances in DNA testing were insufficient justifications for additional or new testing. *Id*. at ¶ 26.

{¶18} Each case is different and must be analyzed on its own merits. In *Ayers*, this court appears to have had a complete record to review to determine whether the statutory requirements were met. Here, we do not have a transcript of the trial testimony. This significantly hinders review.

> In addition to being required to show that prior DNA testing done at the trial stage was not a prior definitive DNA test, the inmate must show that the DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the defendant's case would have been outcome-determinative at the trial in that case.

(Emphasis omitted.)   *State v. Prade*, 126 Ohio St.3d 27, 2010-Ohio-1842, 930 N.E.2d 287, ¶ 24, citing R.C. 2953.74(B)(2).   This, appellant has failed to do.

{¶19} We have only appellant's description of the testimony adduced at trial as set forth in his brief and motions below.   Without a sufficient record to ascertain whether the tests argued for by appellant would be outcome determinative, this court must presume the trial court acted properly.   *State v. Hough*, 8th Dist. Cuyahoga Nos. 98480 and 98482, 2013-Ohio-1543, ¶ 18.   "Under settled authority, the appellant has the duty to file the transcript or such parts of the transcript as are necessary for evaluating the lower court's decision."   *Id.*, citing App.R. 9(B); *State v. Peterson*, 8th Dist. Cuyahoga No. 96958, 2012-Ohio-87, ¶ 7; *State v. Turner*, 8th Dist. Cuyahoga No. 91695, 2008-Ohio-6648, ¶ 13.   The failure to do so prevents this court from properly reviewing the assigned error.

## III.   Conclusion

{¶20} The Ohio Legislature has increasingly made postconviction DNA testing more widely available.   Where advancement in technology and knowledge could provide conclusive evidence of the innocence of a convicted individual, such testing should be liberally allowed to free a wrongfully convicted individual and engender confidence in our system of justice.   But here, appellant has not provided this court with a sufficient record to review his assigned error.   Appellant has failed to sufficiently show that the results of further DNA testing would be outcome determinative in light of the other evidence adduced at trial.

**{¶21}** This cause is affirmed.

It is ordered that appellee recover of said appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., ADMINISTRATIVE JUDGE

SEAN C. GALLAGHER, J., CONCURS IN JUDGMENT ONLY;
MELODY J. STEWART, J., DISSENTS (WITH SEPARATE OPINION)

MELODY J. STEWART, J., DISSENTING:

**{¶21}** Because the trial court failed to provide its reasons for denying the application for DNA testing, I dissent.

**{¶22}** R.C. 2953.73(D) states:

If an eligible offender submits an application for DNA testing under division (A) of this section, the court shall make the determination as to whether the application should be accepted or rejected. * * * The court shall make the determination in accordance with the criteria and procedures set forth in sections 2953.74 to 2953.81 of the Revised Code and, in making the determination, shall consider the application, the supporting affidavits, and the documentary evidence and, in addition to those materials, shall consider all the files and records pertaining to the proceedings against the applicant, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript and all responses to the application filed under division (C) of this section by a prosecuting attorney or the attorney general * * *. Upon making its determination, the court shall enter a judgment and order

that either accepts or rejects the application *and that includes within the judgment and order the reasons for the acceptance or rejection as applied to the criteria and procedures set forth in sections 2953.71 to 2953.81 of the Revised Code.*

(Emphasis added.)

**{¶23}** In its judgment entry, the trial court summarily denied the application by stating only that Upton failed to meet the prerequisites for testing under the statute. The court never explained its reasons for finding that the prerequisites were not met under the criteria and procedures of the statute. This court has repeatedly held that failure to provide an explanation in such instances is contrary to law and constitutes an abuse of discretion. *See State v. Richard*, 8th Dist. Cuyahoga No. 99449, 2013-Ohio-3918, ¶ 9; *State v. Smith*, 8th Dist. Cuyahoga No. 87937, 2007-Ohio-2369, ¶ 8. Thus, it is unclear to me why the majority declines to reverse and remand this case for further proceedings consistent with established precedent, even as the lead opinion recognizes that the trial court did not provide the required explanation, *see supra* ¶ 7. I therefore dissent from the decision to affirm.