[Cite as *State v. Johnson*, 2024-Ohio-5074.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-230641 |
| | | C-240112 |
| Plaintiff-Appellee, | : | TRIAL NO. B-0800258A |
| vs. | : | |
| | | *O P I N I O N.* |
| DAVID JOHNSON, | : | |
| Defendant-Appellant. | : | |


Criminal Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Dismissed in C-230641; Affirmed in C-240112

Date of Judgment Entry on Appeal: October 23, 2024


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *John D. Hill*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*David Johnson,* pro se.

**WINKLER, Judge.**

**{¶1}** Defendant-appellant David Johnson appeals the Hamilton County Common Pleas Court's judgments denying his Crim.R. 33(B) motion for leave to file a new-trial motion and his application for postconviction DNA testing. For the following reasons, we dismiss the appeal numbered C-230641, which challenged the lower court's denial of his motion for leave, and we affirm the common pleas court's judgment denying Johnson's application for DNA testing in the appeal numbered C-240112.

## Background

**{¶2}** In June 2009, David Johnson was found guilty upon jury verdicts of murder, felonious assault, and tampering with evidence for the shooting death of Michael Grace. This court affirmed the findings of guilt on direct appeal, overruling a challenge to the denial of a motion to suppress pretrial identifications. *State v. Johnson*, 2010-Ohio-3861 (1st Dist.). Johnson is currently serving a prison term of 23 years to life.

**{¶3}** The following facts were taken from this court's opinion in Johnson's direct appeal:

> At trial, Carlos Mayo testified that he and his friend Michael Grace had driven to the Hawaiian Terrace apartment complex on December 28, 2007. According to Mayo, as Grace exited from the car, a man had approached the car and asked Grace, "Where you from?" The man walked past Grace and then turned around. Mayo stated that as the man walked back toward Grace, the man pulled out a gun. Mayo heard a gunshot and saw the man and Grace "tussling" on the ground. Mayo, who had a gun, fired some shots toward the man and Grace. According to Mayo, another man approached and began to fire at Mayo. When Mayo attempted to return fire, his gun jammed, so he fled from the

scene. Grace fell in the parking lot and later died from two gunshot wounds.

Mayo testified that when he had seen Johnson's photograph on a website report about the shooting, he recognized Johnson as the first man who had approached and shot Grace. He identified Johnson's photograph during an interview with police officers and later at trial.

Savana Sorrells was in an apartment that overlooked the parking lot. She heard the gunshots and observed the shooting from the apartment. Later, she contacted the Cincinnati Police Department and identified Johnson and Marty Levingston as the men who had shot Grace. According to Sorrells, she knew the men from the apartment complex. At trial, Sorrells again identified Johnson as one of the men whom she had seen shooting Grace.

*Id.* at ¶ 2-4.

**{¶4}** Fourteen years after Johnson was convicted, he moved for leave to file a motion for a new trial based on newly discovered evidence. In his motion, Johnson alleged that his codefendant, Marty Levingston, had received favorable results from postconviction DNA testing that resulted in him being granted a new trial. But in response to Johnson's motion, the State presented competent evidence that although Levingston had filed an application for DNA testing, that testing, for various reasons, was never completed. Accordingly, the common pleas court, determining that Johnson had not demonstrated the discovery of any new evidence on which to base a motion for a new trial, denied his motion but suggested in its entry that Johnson apply for DNA testing. Johnson filed a timely notice of appeal from this judgment (the appeal numbered C-230641).

{¶5}    Shortly after filing his notice of appeal, Johnson filed an application for postconviction DNA testing with the lower court, requesting testing on 13 spent cartridge casings, two bullets, two .45-caliber bullet fragments, and the magazine from a Smith & Wesson .40-caliber handgun containing seven unspent cartridges, all of which were recovered from the scene of the murder. He also asked for testing on two projectiles recovered from cars in the parking lot as well as two fragments recovered from the victim's body. Johnson argued that because his identity was at issue at trial and the eyewitnesses' identifications of him were unreliable, DNA testing that excluded him as a contributor across numerous pieces of evidence would support his claim of innocence. In order for the lower court to rule on his testing application, Johnson requested, and this court granted, a stay of the appeal numbered C-230641.

{¶6}    The common pleas court denied the testing application, finding that DNA testing would not be outcome determinative because Johnson had been convicted under a complicity theory of murder where the evidence against him consisted mainly of eyewitness testimony identifying him as a participant.

{¶7}    Johnson now appeals the denial of his application for DNA testing. After lifting the stay on his other appeal, we consolidated both of Johnson's appeals and consider them together.

### Dismissal of the appeal numbered C-230641

{¶8}    Johnson did not assign any error to the common pleas court's judgment denying his motion for leave to file a new-trial motion. Because there is no error assigned for us to review in the appeal numbered C-230641, it is dismissed. *See State v. McClanahan*, 2024-Ohio-1288, ¶ 5 (1st Dist.) (dismissing appeal where no errors were raised for review).

## DNA Testing

**{¶9}** In the appeal numbered C-240112, Johnson raises a single assignment of error, arguing that the common pleas court abused its discretion by denying his application for postconviction DNA testing. We review a trial court's decision granting or denying an application for DNA testing for an abuse of discretion. R.C. 2953.74(A); *State v. Smith*, 2021-Ohio-1389, ¶ 4 (1st Dist.), citing *State v. Conner*, 2020-Ohio-4310, ¶ 12 (8th Dist.). "A court exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority" constitutes an abuse of discretion. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. An application for postconviction DNA testing is properly denied where the results would not be outcome determinative. *State v. Buehler*, 2007-Ohio-1246, ¶ 37.

**{¶10}** Postconviction DNA testing is governed by R.C. Ch. 2953. When considering an application

> [t]he trial court may "accept" an eligible inmate's application for DNA testing only if the following factors are present: (1) biological material was collected from the crime scene or the victim(s), and the parent sample of that biological material still exists; (2) the parent sample of the biological material is sufficient, demonstrably uncorrupted, and scientifically suitable for testing; (3) the identity of the perpetrator of the charged offense was an issue at the inmate's trial; (4) a defense theory at trial was such that it would permit a conclusion that an "exclusion result would be outcome determinative"; and (5) "if DNA testing is conducted and an exclusion result is obtained, the results of the testing would be outcome determinative."

*State v. Emerick*, 2007-Ohio-1334, ¶ 15 (2d Dist.), *overruled in part on other grounds by State v. Wilson*, 2024-Ohio-4712 (2d Dist.); R.C. 2953.74(C). "If any of the factors

listed in R.C. 2953.74(C) is not satisfied, the court is precluded from accepting the application." *Emerick* at ¶ 16.

{¶11} Here, the lower court determined that the factor listed in R.C. 2953.74(C)(5) was not satisfied and found that if DNA testing is conducted and an exclusion result is obtained, the results of the testing would not be outcome determinative.

### *Compliance with R.C. 2953.73*

{¶12} Johnson first challenges the denial of his application by arguing that the court failed to comply with R.C. 2953.73(D), which provides that a court must set forth its reasons for rejecting an application for DNA testing. But the court explained that it had determined that an exclusion result from DNA testing would not be outcome determinative because Johnson's conviction was based, mainly, on two eyewitnesses who had identified Johnson as one of the three shooters at the scene.

### *Testing would not be outcome determinative*

{¶13} R.C. 2953.71(L) provides that "outcome determinative" means

that had the results of DNA testing of the subject offender been presented at the trial of the subject offender requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the offender is an eligible offender and is requesting the DNA testing, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the offender's case. . ., there is a strong probability that no reasonable factfinder would have found the offender guilty of that offense[.]

R.C. 2953.71(L).

{¶14} Johnson contends that DNA testing across multiple pieces of evidence, all of which would allegedly exclude him as contributing to any DNA recovered from that evidence, would prove his actual innocence and thus demonstrate that DNA testing in his case would be outcome determinative. He cites to *Emerick*, 2007-Ohio-1334, at ¶ 25 (2d Dist.), in support. In *Emerick*, the State's theory at trial was that the victims had been murdered by one perpetrator. Emerick had argued that if the DNA found on numerous pieces of evidence did not match him or the two victims then that would indicate that the person who left the DNA was the actual murderer. The Second District held that in that scenario DNA testing would be outcome determinative. But the facts in *Emerick* are distinguishable from the case before us.

{¶15} Here, there was not just one perpetrator. Eyewitness testimony at Johnson's trial indicated that there were at least three people shooting at or towards the victim. Even if DNA evidence was obtained from the spent shell casings that excluded Johnson as a contributor, this only means that someone else had touched the shell casings and that perhaps the person who had loaded the gun was not the one who had fired it. For example, the record shows that Mayo, who had arrived with the victim, testified that he had grabbed a gun (that was not his and presumably loaded by someone else) from the backseat of the car and had started shooting in an effort to help his friend. *See State v. Sells*, 2017-Ohio-987, ¶ 10 (2d Dist.) (upholding the denial of a postconviction application for DNA testing where, even if testing of the murder weapon and victim's pants had yielded a result establishing the presence of someone else's DNA, it would not have been outcome determinative, but rather would "establish only that someone else had touched the bat and had contact with the victim").

{¶16} Finally, unlike in *Emerick*, there were eyewitnesses to the murder. At Johnson's trial, two eyewitnesses identified him as one of the people shooting at the victim. Although Johnson argues that the eyewitnesses' identifications were unreliable, this court rejected that argument in his direct appeal. *See Johnson*, 2010-

7

Ohio-3861, at ¶ 24 (1st Dist.). Thus, here, because Johnson's convictions were primarily based on eyewitness testimony that he was one of the men shooting at the victim, an exclusion result from DNA testing would not be outcome determinative. *See State v. McCall*, 2006-Ohio-225, ¶ 18 (5th Dist.) (upholding denial of application for DNA testing and holding exclusion result would not be outcome determinative where defendant had been convicted of the offense based primarily upon eyewitness testimony).

{¶17} Because the common pleas court stated its reasons for denying the testing application in its entry and because Johnson has not demonstrated that any DNA testing would be outcome determinative, we hold that the common pleas court did not abuse its discretion in denying the testing application. Accordingly, the single assignment of error is overruled, and the judgment in the appeal numbered C-240112 is affirmed. The appeal numbered C-230641 is dismissed.

Judgment accordingly.

**CROUSE, P.J.,** and **KINSLEY, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.