[Cite as *State v. Sells*, 2017-Ohio-987.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MIAMI COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2016-CA-15 |
| | : | |
| v. | : | Trial Court Case No. 2003-CR-51 |
| | : | |
| MARK D. SELLS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 17th day of March, 2017.

. . . . . . . . . .

PAUL M. WATKINS, Atty. Reg. No. 0090868, Miami County Prosecutor's Office, 201 West Main Street, Safety Building, Troy, Ohio 45373
        Attorney for Plaintiff-Appellee

DONALD R. CASTER, Atty. Reg. No. 0077413, Ohio Innocence Project, University of Cincinnati College of Law, Post Office Box 210040, Cincinnati, Ohio 45221-0040
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, P.J.

{¶ 1} Mark D. Sells appeals from the trial court's denial of his application for post-conviction DNA testing.

{¶ 2} In his sole assignment of error, Sells contends the trial court erred in denying the application where one outcome of DNA testing would exonerate him, making the requested testing "outcome determinative."

{¶ 3} The record reflects that Sells was convicted and sentenced on charges of aggravated murder and aggravated robbery following a 2005 jury trial. The crimes involved him breaking into the home of an elderly victim, Sharid Gantz, with the intent to steal money and beating Gantz to death with a baseball bat. On direct appeal, this court rejected an argument related to a suppression issue but reversed and remanded for resentencing. *State v. Sells*, 2d Dist. Miami No. 2005-CA-8, 2006-Ohio-1859. Sells appealed again after resentencing, and this court affirmed. *State v. Sells*, 2d Dist. Miami No. 2006-CA-27, 2007-Ohio-4213. Thereafter, in April 2016, Sells filed his application for DNA testing. (Doc. #295). The only evidence cited in the application was a piece of leather tape from the handle of the murder weapon/baseball bat, which had been found in a creek near the crime scene. (*Id.*). In a memorandum accompanying his application, Sells requested DNA testing of the leather tape and of the waistband of the pants Gantz was wearing when he was killed. (*Id.* at memorandum pg. 6).

{¶ 4} Upon review, the trial court denied Sells' application. The trial court reviewed the evidence presented at trial and, applying R.C. 2953.71, et seq., concluded that an "exclusion result" would not be "outcome determinative." (Doc. #305 at 4-5). In relevant part, the trial court reasoned:

Assuming, for arguments sake, that DNA testing of the murder weapon/bat handle produced an "exclusion result" that was analyzed, considered, and admitted into evidence in the context of the trial, the Court finds that a reasonable factfinder would have nevertheless found the Defendant guilty of aggravated murder beyond a reasonable doubt based upon the substantial, overwhelming, reliable and credible evidence properly introduced at trial.

By way of example, at trial the State produced testimony from co-defendants Barrett and Cassidy who were present at the time that the Defendant brutally murdered Mr. Gantz. (Tr. 782-821 and 458-494) Further, the Defendant made admissions regarding his role in the murder to several individuals who testified at trial including Sterling Walters, James Lord, Christopher Cassidy, Ashley Benton, and Richard Lord. (Tr. 964-972; Tr. 942; Tr. 915-919; Tr. 908; Tr. 920-926; Tr. 902-908)

Moreover, there was testimony from Cheryl Todd that the Defendant had purchased a pack of Camel Turkish Gold cigarettes which were subsequently found at the victim's residence. These cigarettes had the Defendant's DNA present on them. (Tr. 950-952)

With regard to additional forensic evidence admitted at trial, the Court notes that DNA testing demonstrated that the victim's blood was on the Defendant's "Ohio State pullover" which the Defendant wore on the date of the offense. (Tr. 1111-1164) Further, Defendant's blood was found in the victim's car in two locations that were consistent with the testimony of the

co-defendants regarding the mechanics of the crime. (Tr. 1111-1164). In addition, the Defendant's blood was found on a pillow case recovered from the victim's home. (Tr. 1148-1149, 1176)

Put simply, an "exclusion result" from a DNA test on the bat handle/murder weapon would do little to advance the Defendant's arguments that he was not the perpetrator of this heinous crime. In considering the Defendant's application, the Court had also reviewed the following cases as authority in supporting its decision denying Defendant's application. *State v. Emrick*, 2011-Ohio-5543, 2011 WL 5137200 (2d Dist. Ct. of App., decided Oct. 28, 2011) and *State v. Buehler*, 113 Ohio St.3d 114, 863 N.E.2d 124.

Almost as an afterthought, the Defendant also requests testing of the victim's pants in their memorandum; although no such request was made in Defendant's original application under R.C. 2953.71. Defendant does not indicate that the victim's pants have been preserved or if there is some type of material to be tested. The Defendant does engage in several levels of speculation regarding the pants: this was a sexually motivated crime; the perpetrator's DNA may be found on the waistband of the pants; such DNA, if found, may not be the perpetrator but if it matched the DNA on the bat handle then it would eliminate all other potential suspects; and so on. Insofar as this testing is requested, the Defendant has failed to meet the basic statutory requirements set forth in R.C. 2953.71 and as a result, said request is denied.

Therefore, the Court finds that a reasonable factfinder would have found the Defendant guilty of aggravated murder beyond a reasonable doubt even if DNA testing of the handle of the bat/murder weapon produced an "exclusionary result" which was analyzed, considered, and admitted into evidence in the context of trial, because there exists overwhelming, credible, and reliable evidence properly introduced at trial that Defendant committed aggravated murder consistent with the jury's verdict at trial. Defendant's application pursuant to R.C. 2953.71 is hereby denied.

(*Id.* at 4-5).

{¶ 5} Although the statutory scheme in R.C. 2953.71, et seq. contains various requirements, Sells' appeal focuses on whether an exclusion result obtained from his requested DNA testing would be "outcome determinative." Where such a result *would not* be outcome determinative, an application for post-conviction DNA testing properly is denied. *State v. Buehler*, 113 Ohio St.3d 114, 2007-Ohio-1246, 863 N.E.2d 124, ¶ 37. We note that a trial court has discretion to determine whether a particular result would be outcome determinative in a given case. *Id.*; *see also* R.C. 2953.72(A)(8) (recognizing "that the court of common pleas has the sole discretion, subject to an appeal * * * to determine whether * * * an eligible offender's application for DNA testing satisfies the acceptance criteria," which under R.C. 2953.74(C)(5) include a requirement that an exclusion result be outcome determinative).[1] Accordingly, we will review the trial court's decision for an

---

[1] We note that unrelated language in R.C. 2953.72(A)(8) dealing with discretionary appeals to the Ohio Supreme Court in death-penalty cases was declared unconstitutional and severed from the statute in *State v. Noling*, Ohio Sup. Ct. Slip Opinion No. 2016-Ohio-8252, ¶ 58-63.

abuse of discretion.[2] *See*, *e.g.*, *State v. Hayden*, 2d Dist. Montgomery No. 26524, 2015-Ohio-3262, ¶ 12 ("We therefore review the trial court's denial of a motion for further DNA testing for an abuse of discretion."); *State v. Bunch*, 7th Dist. Mahoning No. 14 MA 168, 2015-Ohio-4151, ¶ 94 ("As aforementioned, we review the trial court's decision on the outcome determinative requirement for an abuse of discretion.").

**{¶ 6}** The statute at issue defines an "exclusion result" as "a result of DNA testing that scientifically precludes or forecloses the subject offender as a contributor of biological material recovered from the crime scene or victim in question, in relation to the offense for which the offender is an eligible offender[.]" R.C. 2953.71(G). "Outcome determinative" means "that had the results of DNA testing of the subject offender been presented at the trial of the subject offender requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the offender is an eligible offender and is requesting the DNA testing, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the offender's case * * *, there is a strong probability that no reasonable factfinder would have found the offender guilty of that offense[.]" R.C. 2953.71(L).

**{¶ 7}** As set forth above, the trial court rejected Sells' argument that his requested DNA testing would be outcome determinative even if it produced results excluding him as the source of any DNA that might be found on the murder weapon and on the victim's

---

[2] On appeal, Sells urges us to apply abuse-of-discretion review to the trial court's factual findings while applying de novo review to determine whether an exclusion result would be outcome determinative. We find this argument unpersuasive. As set forth above, the statutory scheme gives a trial court discretion to determine whether a particular test result is outcome determinative. That being so, we continue to believe abuse-of-discretion review is proper on appeal. In any event, on the record before us we would reach the same conclusion here even applying de novo review.

pants. On appeal, Sells insists that an outcome-determinative result would exist if both of these items yielded DNA matching some other person. In support, he cites *State v. Emerick*, 170 Ohio App.3d 647, 2007-Ohio-1334, 868 N.E.2d 742 (2d Dist.), and argues that "the outcome determinate standard can be established when DNA test results reveal the DNA profile of a third party (which excludes the defendant) across multiple items with which the perpetrator had contact or likely had contact." (Appellant's brief at 8). In other words, Sells reasons that if the same DNA profile is found on multiple crime-scene items, a strong inference exists that the person who left the DNA is the perpetrator. This argument is consistent with *Emerick*, in which this court opined: "If the unidentified donor's DNA is located on different evidentiary items, that individual would be the actual murderer. Under this scenario, DNA analysis of the requested evidentiary items would clearly be outcome determinative with respect to the question of Emerick's guilt." *Emerick* at ¶ 25.

{¶ 8} Upon review, we find *Emerick* factually distinguishable. In that case, the State's theory at trial was that only one perpetrator committed a double homicide, and the State presented no DNA evidence linking Emerick to the murders. *Id*. Under these circumstances, this court concluded that the presence of someone else's DNA on multiple pieces of crime-scene evidence would be outcome determinative and would exonerate Emerick. *Id*.

{¶ 9} In the present case however, the State's theory was that Sells went to victim Sharid Gantz's home accompanied by two co-defendants. In addition, the State had DNA evidence, eyewitness testimony, an alleged confession by Sells to a third party, and other strong physical evidence linking Sells to the murder of Gantz. In particular, the co-defendants both testified that they accompanied Sells to Gantz's house, where Sells

proceeded to force entry and beat Gantz to death with a baseball bat. The State also presented evidence (1) that Sells was seen shortly after the murder with cuts on his hands, (2) that Sells had made an apparent joke about having killed Gantz, (3) that Sells had been overheard threatening his co-defendants if they informed on him, (4) that Sells had stated, prior to the murder, that he would kill Gantz and take his money, (5) that Sells confessed to the murder while in jail awaiting trial, (6) that glass fragments embedded in Sells' shoe had a "refractive index" that matched glass fragments found at the crime scene and embedded in the baseball bat, (7) that Sells' DNA was found in blood in the victim's car, which the co-defendants testified Sells broke into immediately after the murder, (8) that blood was found on a sweatshirt worn by Sells at the time of the crimes and it contained a mixture of DNA from two individuals—and both Sells and the victim were among the one in 1,600 people who were possible contributors, and (9) that Sells' DNA was found on cigarette butts discovered outside the victim's house, which helped confirm the co-defendants' testimony that he smoked there before killing the victim.

{¶ 10} Even if we accept, arguendo, that Sells' requested testing of the murder weapon and the victim's pants would have yielded a result establishing the presence of someone else's DNA, such a result would not be outcome determinative with regard to Sells' guilt. We agree with the trial court that even if someone else's DNA were found on the baseball bat handle and on the victim's pants, that evidence would not reasonably exclude Sells as a perpetrator of the crime at issue. Such evidence would establish only that someone else had touched the bat and had contact with the victim. It would not negate the overwhelming evidence of Sells' own involvement in the crime. In the words of R.C. 2953.71(L), the requested testing would not create "a strong probability that no

reasonable factfinder would have found [Sells] guilty of th[e] offense[.]" Accordingly, we find no error in the trial court's denial of his application for post-conviction DNA testing.

{¶ 11} The sole assignment of error is overruled, and the judgment of the Miami County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies mailed to:

Paul M. Watkins
Donald R. Caster
Hon. Jeannine N. Pratt