[Cite as *State v. Baker*, 2024-Ohio-5250.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,

  v.

WILLIAM H. BAKER,

      DEFENDANT-APPELLANT.

CASE NO. 1-24-12

O P I N I O N

---

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CR2017 0118**

**Judgment Affirmed**

**Date of Decision:  November 4, 2024**

---

**APPEARANCES:**

    *William H. Baker,* **Appellant**

    *John R. Willamowski, Jr.* **for Appellee**

**EPLEY, J.**

{¶1} Appellant William H. Baker appeals from the judgment of the Allen County Court of Common Pleas after it denied his application for post-conviction DNA testing. For the reasons that follow, the judgment of the trial court is affirmed.

## I.     Facts and Procedural History

{¶2} The following comes from this Court's Opinion in *State v. Baker*, 2018-Ohio-3431 (3d Dist.) (*Baker I*). On April 7, 2017, A.B., who is Baker's teenage daughter, was not feeling well, and went into her father's bedroom to tell him that she was feeling nauseous. A.B. later testified that her father began rubbing her back while she was sitting on his bed. She said that Baker then began rubbing her sides and then her stomach. A.B. testified that Baker moved his hands under her clothing and placed his fingers into her vagina. She said that Baker, who was not wearing clothes, rolled A.B. onto her back, took A.B.'s clothes off, and penetrated her with his tongue. A.B. testified that, as her father was undertaking these actions, she had her hands covering her face, repeatedly saying "no." A.B. stated that Baker then put her clothes back on her and instructed her not to tell anyone about what happened.

{¶3} A.B. then went to school where she communicated to her boyfriend, T.A., what Baker had allegedly done. A.B. and T.A. told the school resource officer and the guidance counselor what had happened. Shortly thereafter, A.B. had a full

medical examination at Lima Memorial Hospital. Later that day, Detective Nate Music interviewed Baker. During the interview, Baker stated that he had been drinking on the night of April 6, 2017, and indicated that he was unable to remember everything that transpired on the morning of April 7, 2017. He did, however, state what he did remember from that morning. The police interview with Baker was recorded and admitted at trial.

{¶4} At trial, the jury heard testimony that A.B.'s abdomen was swabbed in an attempt to collect a DNA sample for testing. There was also testimony that testing showed that samples collected contained DNA that was consistent with both A.B. and Baker's male specific profile; Baker was included as a contributor of DNA found on A.B. In fact, "the estimated proportion of the population that could not be excluded as a contributor to this sample [was] one in fifty thousand unrelated individuals." Trial Tr. at 208.

{¶5} On October 19, 2017, Baker was found guilty of all of the charges against him. The trial court entered convictions for two counts of rape in violation of R.C. 2907.02(A)(2), (B) and two counts of gross sexual imposition in violation of R.C. 2907.05(A)(1), (C)(1). Baker was sentenced to a total of 20 years in prison on December 18, 2017.

{¶6} Baker filed a direct appeal, challenging the manifest weight of the evidence and argued that trial counsel was ineffective. In August 2018, this Court

affirmed the decision of the trial court. *Baker I*. Then, in August 2023, Baker filed a petition for post-conviction relief. The trial court denied it as untimely.

{¶7} In October 2023, Baker filed an application for post-conviction DNA testing pursuant to R.C. 2953.73. According to the application, Baker requested the following items to be tested: (1) gauze from pubic hair combings; (2) skin swabs – forehead and abdomen; (3) underwear; (4) all swabs of vaginal samples; (5) any other unknown swabs. He argued that "[h]ad all available samples that were collected been tested and the results submitted to the defense, it would have changed the outcome . . . at the trial stage of this case." The trial court denied the application for two reasons. It found that "[Baker] did not meet the outcome-determinative criteria of R.C. 2953.74(B)(1)." The court also determined that he could not meet all of the six required criteria set forth in R.C. 2953.74(C).

{¶8} Baker has filed an appeal that features three assignments of error. We will address them in a manner that facilitates our analysis.

## II. Outcome Determinative

{¶9} In his first assignment of error, Baker argues that "the trial court erred when it held that DNA testing would not be outcome determinative as required by R.C. 2953.74(B), because such a test could definitively establish his innocence or create a strong probability that a reasonable factfinder would find reasonable doubt as to his guilt." Appellant's Brief at 9. He makes a similar claim in his second

assignment of error. Accordingly, we will consider the first and second assignments together.

{¶10} "If an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code and a prior definitive DNA test has been conducted regarding the same biological evidence that the offender seeks to have tested, the court shall reject the offender's application." R.C. 2953.74(A). A "definitive DNA test" is a test that clearly establishes whether the biological material is that of the offender." R.C. 2953.71(U).

{¶11} If an offender overcomes that first condition, a court may accept an application for DNA testing under R.C. 2953.73(B) if one of the following applies:

> (1)The inmate did not have a DNA test taken at the trial stage in the case in which the inmate was convicted of the offense for which the inmate is an eligible inmate and is requesting the DNA testing regarding the same biological evidence that the inmate seeks to have tested, the inmate shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject inmate's case as described in division (D) of this section would have been outcome determinative at that trial stage in that case, and, at the time of the trial stage in that case, DNA testing was not generally accepted, the results of DNA testing were not generally admissible in evidence, or DNA testing was not yet available.
>
> (2) The **inmate had a DNA test taken at the trial stage** in the case in which the inmate was convicted of the offense for which the inmate is an eligible inmate and is requesting the DNA testing regarding the same biological evidence that the inmate seeks to have tested, **the test was not a prior definitive DNA test** that is subject to division (A) of this section, and the **inmate shows that DNA exclusion when analyzed** in the context of and upon consideration of all available admissible evidence related to the subject inmate's case as described

in division (D) of this section **would have been outcome determinative** at the trial stage in that case.

(Emphasis added) R.C. 2953.74(B)(1)-(2).

{¶12} In this case, some DNA testing was done at the trial level. BCI tested a vaginal swab which found Y-STR DNA that could not rule out Baker. The second item tested was the skin swab from the victim's abdomen. Results indicated that there was a mixture of contributors – A.B., of course, was a major contributor, but Baker was also found to be a contributor. In addition, Y-STR DNA did not rule out Baker. Thus, there was a "definitive DNA test" as to the vaginal and abdominal swabs and they cannot be tested again.

{¶13} Baker, however, asks for additional items to be tested, including gauze from pubic hair combings and underwear. Unlike the already-tested vaginal and abdominal swabs, testing on the gauze and underwear is not automatically foreclosed upon; the analysis, therefore, moves to whether testing of those items would be outcome determinative. R.C. 2953.74(B)(2).

{¶14} "[W]hen determining whether a DNA testing result would have been outcome determinative, the trial court does not consider the probability that a reasonable factfinder would have found the offender guilty if the factfinder had been presented with a DNA testing result that either (1) excludes the offender and definitively identifies the source of the biological material or (2) rules out all persons known or alleged to be connected to the crime or the investigation. *State v. Ridley*,

2020-Ohio-2779, ¶ 56 (3d Dist.). Instead, the court must consider if DNA testing would have been outcome determinative had the factfinder been presented with a DNA result showing only that the offender is not the source of the biological material. *Id. But see State v. Sells*, 2017-Ohio-987, ¶ 6 (2d Dist.), citing R.C. 2953.71(L) ("Outcome determinative" means that had the DNA results been presented at trial, there is a strong probability that no reasonable fact finder would have found the offender guilty.). Here, looking at all of the evidence presented at trial, we cannot say that the potential DNA testing would have been outcome determinative.

{¶15} At trial, A.B. testified that she was not feeling well on the morning of April 7, 2017, and went to Baker's bedroom. She recounted that she sat down on her father's bed and Baker began rubbing her back. From there, he started rubbing her stomach and then reached under her clothes, placing his fingers inside of her vagina. A.B. testified that Baker then rolled her onto her back, removed her clothes, and then began licking her stomach, eventually penetrating her vagina with his tongue. Throughout the ordeal, A.B. told her father "no." According to trial testimony, Baker then put A.B.'s clothes back on her and asked that she not tell anyone about what happened. A.B. told the jury that while this was the first time Baker had touched her in a sexual manner, he had previously made comments about her appearance that made her feel uncomfortable.

{¶16} In addition to A.B.'s testimony, Baker's own words incriminated him. At the request of the State, the trial court admitted the recorded police interview with Baker into evidence. At the beginning of the interview, Baker told the detective: "I'm a horrible person. . . . Is my daughter okay?" Trial Ex. 6. Later he said:

> Next thing I know, I wake up and the position I was in. I was between my daughter's legs. And I came through as I looked up at my daughter. And I'm like, I was just in awe, like what the hell? What's going on?

Trial Ex. 6. He later seemed to suggest that he was acting under the mistaken impression that he was in bed with a female friend.

> I don't know if I was dreamin' that I was touching her [Baker's female friend] or what. I was touching between my daughter's legs and obviously I was naked and my daughter's pants and panties was off. And I was just like in awe. I got off of her, picked up her clothes, and put them on her, and started apologizing, trying to talk to her.

Trial Ex. 6. The evidence against Baker was overwhelming.

{¶17} But even further still, new DNA testing is foreclosed by R.C.2953.74(C). It states that the court may accept an application for post-conviction DNA testing only if six prerequisites are met.

(1) The court determines pursuant to section 2953.75 of the Revised Code that biological material was collected from the crime scene or the victim of the offense for which the offender is an eligible offender and is requesting the DNA testing and that the parent sample of that biological material against which a sample from the offender can be compared still exists at that point in time.

(2) The testing authority determines all of the following pursuant to section 2953.76 of the Revised Code regarding the parent sample

of the biological material described in division (C)(1) of this section:

(a) The parent sample of the biological material so collected contains scientifically sufficient material to extract a test sample

(b) The parent sample of the biological material so collected is not so minute or fragile as to risk destruction of the parent sample by the extraction described in division (C)(2)(a) of this section; provided that the court may determine in its discretion, on a case-by-case basis, that, even if the parent sample of the biological material so collected is so minute or fragile as to risk destruction of the parent sample by the extraction, the application should not be rejected solely on the basis of that risk.

(c) The parent sample of the biological material so collected has not degraded or been contaminated to the extent that it has become scientifically unsuitable for testing, and the parent sample otherwise has been preserved, and remains, in a condition that is scientifically suitable for testing.

(3) The court determines that, at the trial stage in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing, the identity of the person who committed the offense was an issue.

(4) The court determines that one or more of the defense theories asserted by the offender at the trial stage in the case described in division (C)(3) of this section or in a retrial of that case in a court of this state was of such a nature that, if DNA testing is conducted and an exclusion result is obtained, the exclusion result will be outcome determinative.

(5) The court determines that, if DNA testing is conducted and an exclusion result is obtained, the results of the testing will be outcome determinative regarding that offender.

(6) The court determines pursuant to section 2953.76 of the Revised Code from the chain of custody of the parent sample of the

> biological material to be tested and of any test sample extracted from the parent sample, and from the totality of circumstances involved, that the parent sample and the extracted test sample are the same sample as collected and that there is no reason to believe that they have been out of state custody or have been tampered with or contaminated since they were collected.

R.C.2953.74(C)(1)-(6). The trial court found, and we agree, that Baker cannot meet half of the requirements. He cannot meet (3), which requires that identity was a question at trial. Both A.B. and Baker put Baker at the scene of the crime and both stated that he did inappropriate and unlawful things to A.B. Neither can he meet (4) or (5) - an exclusion result in a test or re-test would not be outcome determinative; there is ample evidence that Baker raped his daughter.

{¶18} Based on the record, we cannot say the trial court erred by rejecting Baker's application for post-conviction DNA testing as he had prior definitive DNA tests and new tests would not have met the outcome determinative criteria. R.C. 2953.74(B)(1) and (B)(2). Further, he cannot meet the requirements set forth in R.C.2953.74(C). Baker's first and second assignments of error are overruled.

## III.    R.C. 2953.82

{¶19} In his third and final assignment of error, Baker asserts that the trial court erred by not "look[ing] to R.C. 2953.82 to determine the requirements and procedures that were applicable to Appellant's Application for DNA Testing." Appellant's Brief at 16. His argument appears to be that the State failed to file a timely response to his application because the statute requires the State to respond

within 45 days of filing. The problem with this argument, however, is that the statute cited by Baker has been repealed. But even if that were not the case, and it were still a valid law, R.C. 2953.82 would not apply to him because the statute applied to "testing for inmates who pleaded guilty or no contest," and Baker was found guilty by a jury. The third assignment of error is overruled.

## IV    Conclusion

{¶20} The judgment of the trial court is affirmed.

*Judgment Affirmed*

**ZIMMERMAN and MILLER, J.J., concur.**

**/hls**

**\*\* Judge Christopher B. Epley of the Second District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**