[Cite as *State v. Ross*, 2025-Ohio-2898.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30398 |
| Appellee | : | |
| | : | Trial Court Case No. 2018 CR 0324 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| MARTIN H. ROSS | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on August 15, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
CHRISTOPHER B. EPLEY, PRESIDING JUDGE

LEWIS, J., and HUFFMAN, J., concur.

**OPINION**
MONTGOMERY C.A. No. 30398


MARTIN H. ROSS, Pro Se, Appellant
MATHIAS H. HECK, JR., by TRISTAN D. DIEGEL, Attorney for Appellee


EPLEY, P.J.

{¶ 1} Defendant-Appellant Martin H. Ross appeals from a judgment of the Montgomery County Court of Common Pleas, which denied his application for post-conviction DNA testing. For the reasons that follow, the judgment of the trial court is affirmed.

## I.      Facts and Procedural History

{¶ 2} The following facts are taken from the direct appeal in this case, *State v. Ross*, 2020-Ohio-6958 (2d Dist.). L.W., who was 11 years old at the time, awoke early in the morning of August 2, 2018, to find a man lying on the floor in her bedroom. The man, later identified as Ross, pushed the girl facedown onto her bed and threatened to "do something" to her if she did not keep quiet. Ross then raped L.W. by penetrating her anus.

{¶ 3} On August 13, 2018, a Montgomery County grand jury indicted Ross as follows: Count 1, aggravated burglary, a first-degree felony pursuant to R.C. 2911.11(A)(1) and (B); Count 2, kidnapping, a first-degree felony pursuant to R.C. 2905.01(A)(4) and (C)(1); and Count 3, rape of a person less than 13 years old, a first-degree felony pursuant to R.C. 2907.02(A)(1)(b) and (B). The case was tried to the bench, and on October 8, 2019, Ross was found guilty on all counts.

{¶ 4} Ross appeared for sentencing on November 5, 2019. The trial court merged Counts 1 and 2 with Count 3 and sentenced Ross to a term of 10 years to life in prison. He appealed, and we affirmed his conviction.

{¶ 5} On January 9, 2024, Ross, pro se, filed an Application for DNA Testing in which

he requested that the victim's underwear, bed sheets, plastic on the bed, gloves, and "any evidence that was submitted against the defendant" be tested. He also claimed that he had not been at the scene of the crime and that the State had used misleading evidence to convict him. The trial court denied Ross's application, finding that he did not demonstrate that identity was at issue and that further DNA testing would not be outcome determinative.

{¶ 6} Ross has filed a timely appeal with two assignments of error. We will address them in a way that facilitates our analysis.

## II.     Post-Conviction DNA Testing

{¶ 7} In both his first and second assignments of error, Ross argues – for different reasons – that the trial court erred when it rejected his application for post-conviction DNA testing. He first asserts that even though DNA testing was available at the time of his trial in 2019, recent scientific advances justify testing and/or re-testing items like underwear, sliding glass door handles, refrigerator handles, doorknobs, a pillow, shorts, mattress fabric, and fingernail scrapings. Second, he claims that the court erred because it is possible that further testing would be outcome determinative and could possibly exonerate him.

{¶ 8} Post-conviction DNA testing is governed by R.C. Chapter 2953. A trial court has discretion to accept or reject an application for DNA testing. R.C. 2953.74(A). Thus, absent an abuse of discretion, we will not reverse the decision of the trial court. An abuse of discretion occurs when the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 9} Pursuant to R.C. 2953.74(B)(1), an eligible offender (both parties and the trial court agree that Ross is an eligible offender) may apply for post-conviction DNA testing if he or she did **not** have a DNA test at trial. The court may accept the application only if the offender "shows that DNA exclusion when analyzed in the context of and upon consideration

of all available admissible evidence related to the subject offender's case . . . would have been *outcome determinative* at the trial stage, . . . and at the time of the trial, . . . DNA testing was not generally accepted, the results of DNA testing were not generally admissible in evidence, or DNA testing was not yet available." (Emphasis added.) R.C. 2953.74(B)(1).

{¶ 10} If there was a DNA test taken at the trial stage and the offender wants new testing of the same biological evidence, he or she must show that the test was not a prior definitive DNA test and that DNA exclusion, when analyzed in the context of and upon consideration of all available admissible evidence related to the case, would have been outcome determinative. R.C. 2953.74(B)(2). "Outcome determinative" means that had the DNA results been presented at trial, there is a strong probability that no reasonable fact finder would have found the offender guilty. *State v. Sells*, 2017-Ohio-987, ¶ 6 (2d Dist.), citing R.C. 2953.71(L).

{¶ 11} In his application for DNA testing, Ross asks that the "victim's underwear, bed sheets, gloves, plastic on the bed, [and] any evidence that was submitted against the defendant" be tested (or in some cases re-tested) for DNA. His list includes items that were tested for DNA before his trial (like the victim's underwear) and some that were not (gloves, plastic from the bed). With respect to both categories of evidence, the analysis is whether an exclusion result would lead to a different outcome at trial. Based on the record in this case, it seems very likely that the outcome would have been the same, because there was strong evidence – including DNA evidence – that Ross was the perpetrator.

{¶ 12} At trial, the victim positively identified Ross multiple times, first picking him out of a photospread and then identifying him in court. She testified that Ross held her down and engaged in sexual conduct with her against her will and, when Ross left the bedroom after raping her, she saw his face when he turned to look back. *Ross* at ¶ 16. Her description,

moreover, included details that were independently verified. The victim testified that Ross had "[a] boot for his leg" and that he wore "some gloves," which she described as "plastic" and "[g]reen or blue" in color. *Id* at ¶ 17. Dayton police confirmed that when they encountered him, Ross was wearing a "medical boot on one of his legs" and had "green rubber gloves hanging out of one of his pockets." *Id*. Significantly, even if the gloves, bedding, and other items were tested and Ross's DNA was excluded on those items, he could not overcome that his DNA *was* found on the victim's underwear. *Id*. at ¶ 21-22. Thus, the outcome of the trial would not change.

{¶ 13} Finally, Ross argues that because there have been advances in testing technology in the years since his trial, new evidence should now be tested. That, however, is foreclosed by the statute. "The plain language in R.C. 2953.74(B)(1) provides that an application for post-conviction DNA testing by an offender who did not have a DNA test taken at the trial stage may only be accepted when, *at the time of the trial*, DNA testing was not generally accepted or available or the results were not generally admissible. The statute does not provide that future advances in DNA technology could result in acceptance of a post-conviction DNA testing application. If the legislature had wanted to expand DNA testing to be available because of future advancements in DNA technology, it could have provided such in the statutory language, but it did not." (Emphasis in original.) *State v. Wilson*, 2024-Ohio-4712, ¶ 20 (2d Dist.).

{¶ 14} Because any exclusion results from new testing would not be outcome determinative, we cannot say that the trial court abused its discretion when it overruled Ross's application for post-conviction DNA testing. The assignments of error are overruled.

### III. Conclusion

{¶ 15} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.