[Cite as *State v. Bowman*, 2025-Ohio-2893.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2025-CA-9 |
| Appellee | : | |
| | : | Trial Court Case No. 20CR00084 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| RICHARD BOWMAN | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on August 15, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
CHRISTOPHER B. EPLEY, PRESIDING JUDGE

LEWIS, J., and HUFFMAN, J., concur.

**OPINION**
DARKE C.A. No. 2025-CA-9


RICHARD M. BOWMAN, Appellant, Pro Se
DEBORAH S. QUIGLEY, Attorney for Appellee


EPLEY, P.J.

{¶ 1} Defendant-Appellant Richard Bowman appeals from a judgment of the Darke County Court of Common Pleas. which denied his application for postconviction DNA testing. For the reasons that follow, the judgment of the trial court is affirmed.

## I.      Facts and Procedural History

{¶ 2} Bowman was indicted in June 2020 for the aggravated murder of his wife, Teresa Bowman. Bowman claimed he had found Teresa on the floor near a ladder in the garage of their home with a bleeding laceration on the back of her head; he called 911 around 11:30 a.m. He advised that it appeared she had hit her head on the back of the truck after falling from the ladder. Bowman performed CPR on Teresa, and he said that his clothing became bloody while doing so.

{¶ 3} The initial first responder on scene did not observe any blood on Bowman's person or clothing. The officer noted that Bowman wore a red long-sleeved sweatshirt or jacket with a white emblem on the left breast plate, blue jeans, and brown work boots or shoes. During the investigation, officers obtained surveillance video and attempted to confirm Bowman's story that, before the murder, he had left home at 9:30 a.m. to run errands. A video obtained from a Dollar General store showed Bowman in a dark jacket or vest and dark shoes with blue jeans, different from the clothing he was wearing when police arrived at his home. Bowman and his vehicle were not observed on surveillance videos obtained from the other locations where he claimed to have been.

{¶ 4} At the time of the murder, Bowman was in a sexual relationship with another woman, and they had planned to spend three days together after the crime—the same number of days his work allotted for bereavement leave. Bowman's girlfriend testified that he told her that he got blood all over his clothes when he performed CPR on his wife and that he burned the bloody clothing. Additionally, he gave incriminating information to a fellow inmate at the Darke County Jail. The inmate testified at trial that Bowman told him that the police had missed finding a two-by-four that was used to hit his wife in the head, that Bowman had burned the two-by-four along with some clothing, that Bowman was going to receive money from Teresa's death, and that Bowman and his mistress wanted to find their own place to live.

{¶ 5} Autopsy results concluded that Teresa's cause of death was strangulation. The laceration on her head was found to be the result of blunt force trauma more likely caused from being struck with an object than from an impact with a flat surface.

{¶ 6} After a jury trial in September 2021, Bowman was found guilty of aggravated murder for killing Teresa. He was sentenced to a mandatory term of life in prison with the possibility of parole after 20 years. Bowman appealed, claiming that his conviction was unsupported by the evidence. We affirmed his conviction. *State v. Bowman*, 2022-Ohio-2705 (2d Dist.). He then filed a pro se petition for postconviction relief pursuant to R.C. 2953.21. The trial court denied the petition, and we affirmed that decision on appeal. *State v. Bowman*, 2023-Ohio-2078 (2d Dist.)

{¶ 7} On July 5, 2023, Bowman filed an application for postconviction DNA testing. He requested that his clothes be tested for the victim's blood, that the victim's coat be tested for "touch DNA," and that a rope found at the scene be tested for "mixed DNA." The trial court denied his application, finding that even if the "results of such DNA testing identified

DNA from other persons, such evidence would not have created a 'strong probability that no reasonable factfinder would have found the offender guilty.' " Judgment Entry at 2. Bowman appealed, but on March 4, 2025, we dismissed it for lack of jurisdiction. It was filed more than 30 days after the trial court's decision.

{¶ 8} On March 24, 2025, Bowman filed a second application for postconviction DNA testing. This time he wanted blood spatter from a door handle, blood from a door jam, "all biological material collected at the crime scene," "all latent prints," and a "small spot of blood beside an 8-inch puddle of blood on the floor of the garage" tested for DNA. He asked that the results be sent to CODIS—a DNA database that allows forensic labs to compare DNA and identify suspects. The trial court again denied his application, this time finding it moot. Bowman appeals, raising two assignments of error.

## II. Postconviction DNA Testing

{¶ 9} In his first assignment of error, Bowman argues that the trial court abused its discretion when it denied his application for DNA testing as moot. It is his contention that the evidence he asked to be tested this time differed from that in his previous application.

{¶ 10} Postconviction DNA testing is governed by R.C. Chapter 2953. A trial court has discretion to accept or reject an application for DNA testing. R.C. 2953.74(A). Absent an abuse of discretion, we will not reverse the decision of the trial court. An abuse of discretion occurs when the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 11} Pursuant to R.C. 2953.74(B)(1), an eligible offender may apply for postconviction DNA testing if he or she did **not** have a DNA test at trial. The court may accept the application only if the offender "shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject

offender's case . . . would have been *outcome determinative* at the trial stage, . . . and at the time of the trial, . . . DNA testing was not generally accepted, the results of DNA testing were not generally admissible in evidence, or DNA testing was not yet available." (Emphasis added.) R.C. 2953.74(B)(1).

{¶ 12} If there was a DNA test taken at the trial stage and the offender wants new testing of the same biological evidence, he or she must show that the test was not a prior definitive DNA test and that DNA exclusion, when analyzed in the context of and upon consideration of all available admissible evidence related to the case, would have been outcome determinative. R.C. 2953.74(B)(2). "Outcome determinative" means that had the DNA results been presented at trial, there is a strong probability that no reasonable fact finder would have found the offender guilty. *State v. Sells*, 2017-Ohio-987, ¶ 6 (2d Dist.), citing R.C. 2953.71(L).

{¶ 13} Initially, we note that we disagree with the trial court's determination that Bowman's most recent application for postconviction DNA testing was moot. The mootness doctrine provides that "courts will not decide . . . cases in which there is no longer any actual controversy." *Black's Law Dictionary* 1100 (9th Ed. 2009). Although Bowman made a previous (unsuccessful) request, this new application asks that different items be tested, and thus, there is still an actual controversy. Therefore, we do not find his March 24, 2025 application for DNA testing to be moot. However, even though we disagree with *why* the trial court denied Bowman's application, we still find it to be the correct outcome. *See BND Rentals, Inc. v. Dayton Power & Light Co.*, 2020-Ohio-4484, ¶ 65 (2d Dist.) ("A decision that achieves the right result must be affirmed, even if the wrong reasoning is used to justify the decision, because an error in reasoning is not prejudicial.").

{¶ 14} R.C. 2953.74(B) mandates that before a trial court can grant an application for postconviction DNA testing, the offender must, among other things, demonstrate that a test's exclusion result would be outcome determinative.

{¶ 15} At trial, the State presented evidence of Bowman's ongoing affair with Katherine Marker. The two met in 2014 or 2015 at a horse show and began dating in 2019, spending time together practically every weekend. They often met at the Quality Inn in Greenville, a location halfway between their homes. Once Covid began in March 2020, however, Marker was unwilling to go to the hotel anymore, so they began visiting each other at Marker's residence. Following Bowman's indictment and pretrial detention, he told Brian Mader, a fellow inmate at the Darke County Jail, that he and Marker were planning to get a place together, and Teresa found out.

{¶ 16} The day before Teresa's murder, Bowman texted Marker that he was taking three days' vacation the following Monday when he neither had vacation time available nor had put in a request for vacation time. Yet, per company policy, he would be entitled to three days' paid time off for bereavement leave if a close family member died. Additionally, although Bowman was scheduled to work on Friday afternoon, he told Marker his boss gave him the day off and she should come to his place at 11 a.m. Importantly, Bowman told Marker that from then on, she should just come to his place every Saturday. The night of Teresa's death, Marker came to Bowman's home and spent the weekend with him at his home for the first time.

{¶ 17} There was also evidence of a pecuniary motive for the murder: Bowman was set to gain over $275,000 if Teresa were to die, and an additional $44,000 if her death were accidental. He portrayed his wife's death as an accident, telling the 911 operator that he thought she had fallen off a ladder and hit her head on the truck because she was only

bleeding from the back of her head and there was blood on the truck. Bowman told Mader, the jail informant, about the money he was going to get from Teresa's death and that he had used a stimulus check to show police that money was not a motive.

{¶ 18} The trial evidence also cast doubt on other stories Bowman told about the circumstances surrounding Teresa's death. Bowman claimed to have attempted CPR on Teresa and to have gotten blood all over himself, but no one observed blood on him or his clothing. That could be, however, because as Marker testified, instead of giving the police the clothes he had on when he found Teresa's body, he had burned them.

{¶ 19} Bowman claimed to have been crawling on his hands and knees on the floor during his attempts to roll Teresa's body and perform CPR. Yet no dirt from the garage was observed on his clothing. Further, although the coroner could not rule out that Bowman had performed CPR on Teresa, her Fitbit did not show any spikes in heart rate or steps prior to EMS's arrival that would support Bowman's story that he had moved Teresa's body or administered CPR.

{¶ 20} Bowman told Mader that he used a two-by-four to hit his wife on the head and that it would never be found because he had burned it. He also told Mader that he had burned his clothes.

{¶ 21} Finally, Bowman fabricated an alibi. Before Teresa's murder, Bowman told Marker that he had a doctor's appointment at 11:00 a.m. After the murder, he told several people he had been running errands for two hours, and he provided police with a detailed route including multiple locations he claimed to have visited during that time. When it was discovered that Bowman had lied about where he had been, he explained that he lied because he knew they were going to blame him for Teresa's death. But, as the detectives

explained, if it had been an accident and he had nothing to do with it, he would not have needed to create an alibi.

{¶ 22} Based on the trial evidence, there was ample evidence to convict Bowman of his wife's murder. Therefore, even if the items he wanted tested were tested and his DNA were not found, it still would not have changed the outcome of the trial. Bowman's first assignment of error is overruled.

### III.  Procedures

{¶ 23} In his second assignment of error, Bowman argues that the trial court erred by not following the statutory procedures outlined in R.C. 2953.73 and 2953.75 when it did not "give analysis and conclusion, and how he came to judgment." Appellant's Brief p. 9. He also argues that the trial court erred in rendering its decision before giving the State a chance to respond.

{¶ 24} According to R.C. 2953.73(D), "[u]pon making its determination, the court shall enter a judgment and order that either accepts or rejects the application and that includes within the judgment and order the reasons for acceptance or rejection[.]" In this case, the trial court rejected Bowman's application because it concluded the issue was moot. Although we found the trial court's determination to be incorrect, it nevertheless complied with the statute in that it gave a reason for the rejection.

{¶ 25} As to Bowman's contention that the court should have let the State respond to his application before making its ruling, the statute makes it clear that the prosecuting attorney is not required to file a response. R.C. 2953.73(C). But even if the trial court ruled prematurely, Bowman suffered no prejudice. Though the State could have been negatively affected by an early decision on an application for postconviction DNA testing that preempted its response, an applicant like Bowman can make no similar claim.

{¶ 26} The second assignment of error is overruled.

## IV.    Conclusion

{¶ 27} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

LEWIS, J., and HUFFMAN, J., concur.